[Civ. No. 38243. First Dist., Div. Four. June 28, 1976.]

JUANRICO HENREID, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
PAUL B. JENSEN, as Public Guardian, etc., Real Party in Interest.

**COUNSEL**

Michael R. Dougherty and Ramon S. Lelli for Petitioner.

No appearance for Respondent.

Keith C. Sorenson, District Attorney, and Elizabeth A. Coyne, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**RATTIGAN, Acting P. J.**—Petitioner Juanrico Henreid seeks a writ of mandate requiring respondent court to grant his petition for a rehearing as to his status as a conservatee under the Lanterman-Petris-Short Act (hereinafter the "Act," or the "LPS Act").[1]

In a petition filed pursuant to the Act, it was alleged that petitioner was "gravely disabled" within its meaning. (§§ 5008, subd. (h), 5350.) At a jury trial thereafter conducted upon that issue (§ 5350, subd. (d)), the jury reached a unanimous verdict that he was "gravely disabled" as alleged. On the day the verdict was returned, respondent court made an order appointing real party in interest as the conservator of petitioner's person and estate. (§ 5350.) Real party placed petitioner in a state hospital pursuant to section 5358.

Two months after the conservatorship was established by the order mentioned, petitioner filed his petition for a rehearing as to his status as

---

[1]Except where expressly indicated otherwise, all statutory references herein are to the LPS Act. (Welf. & Inst. Code, div. 5, pt. 1, commencing with § 5000.)

a conservatee. His claimed right to a rehearing at that time was based upon section 5364, which provides: "At any time, but not more than once each six months, the conservatee may petition the superior court for a rehearing as to his status as a conservatee."

Real party opposed the petition by motion. After hearing arguments on the motion, respondent court made an order in which it stated in pertinent part: "The petition for rehearing is based upon an erroneous interpretation of Welfare and Institutions Code section 5364. Section 5364 requires that six months must elapse from a trial or hearing establishing a conservatorship before a conservatee may petition for rehearing. On the sole grounds of statutory interpretation, [¶] IT Is ORDERED that the motion be and hereby is granted and the petition for rehearing is denied."

In the present proceeding, which petitioner thereupon commenced in this court, the sole question is whether respondent court's interpretation of section 5364 is correct. Petitioner challenges it upon the stated grounds that the express language of the statute must be read as requiring the lapse of a six-month interval *between successive petitions for rehearing* in the course of the conservatorship, but not as a bar to an *initial* petition for rehearing filed within its first six months. This construction rests upon the premises that the legislative intent which underlies a statute must be ascertained from its language, which leaves no room for interpretation if it is clear and unambiguous (*Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 353-354 [139 P.2d 908]; *Leffel* v. *Municipal Court* (1976) 54 Cal.App.3d 569, 572 [126 Cal.Rptr. 773]); and that the courts may not usurp the legislative function by rewriting statutory language upon the basis of an ambiguity which is judicially invented where none exists. (*Rumetsch* v. *Davie* (1920) 47 Cal.App. 512, 515 [190 P. 1075].)

Real party argues that the language of section 5364 is ambiguous, that petitioner's strictly literal construction of it is untenable in light of the consequences it portends (discussed *infra*), and that respondent court's interpretation is valid because the courts must look to the full context of a statute and, "where uncertainty exists," must permit the consequences of a particular interpretation to override a strictly literal construction where this is necessary to effectuate the statutory purpose. (See, e.g. [cited by real party], *Ivens* v. *Simon* (1963) 212 Cal.App.2d 177, 181-182 [27 Cal.Rptr. 801].)

██ It is true that a reading of the express language of section 5364 may support the literal construction urged by petitioner. Support for that construction also appears, in principle, in provisions of the LPS Act which state its purposes in terms of the rights and liberties of persons whom it affects. (§ 5001, subds. (a), (e).)[2]

As the parties agree, however, section 5364 clearly requires the lapse of six months between a conservatee's filing of *successive petitions for a rehearing* of his status. Its provision to this effect expresses the Legislature's intent to place a limitation upon the frequency with which a "gravely disabled" conservatee may relitigate his status during the course of his conservatorship. It also reflects a legislative determination that the prerequisite of a six-month interval effects an appropriate limitation in point of time.

Another stated purpose of the LPS Act is "[t]o provide individualized treatment, supervision, and placement services" to "gravely disabled" conservatees. (§ 5001, subd. (e).) In light of this purpose, the six-month limitation is reasonable in its legislative intent and timing alike: the purpose would be frustrated if the status of a conservator charged with carrying it out is not established with sufficient finality to permit him the time, or the clear authority, to do so. (See *ibid.* and §§ 5358, 5359.) His status manifestly lacks such finality if a conservatee may challenge it one day after it is established in the first instance. The reasonable six-month limitation accordingly makes no sense if it does not apply before an initial petition for a rehearing, by the conservatee, as well as afterward. Respondent court's interpretation of section 5364 is thus the only one which sensibly effectuates the statute.

---

[2]The full text of section 5001, in which all of the Act's purposes are stated, reads:

"5001. The provisions of this part [i.e., of the Act] shall be construed to promote the legislative intent as follows:

"(a) To end the inappropriate, indefinite, and involuntary commitment of mentally disordered persons and persons impaired by chronic alcoholism, and to eliminate legal disabilities;

"(b) To provide prompt evaluation and treatment of persons with serious mental disorders or impaired by chronic alcoholism;

"(c) To guarantee and protect public safety;

"(d) To safeguard individual rights through judicial review;

"(e) To provide individualized treatment, supervision, and placement services by a conservatorship program for gravely disabled persons;

"(f) To encourage the full use of all existing agencies, professional personnel and public funds to accomplish these objectives and to prevent duplication of services and unnecessary expenditures."

Other provisions of the LPS Act support the court's interpretation of section 5364. The Act expressly provides that *any* conservatorship established for a "gravely disabled" person "shall automatically terminate one year after the appointment of the conservator," and that "[a]ny facility in which a conservatee is placed must release the conservatee at his request" when termination occurs (§ 5361), unless the conservator petitions for reappointment within the year and is reappointed in fact. (§§ 5361, 5362.) The appointing court bears the responsibility of initiating proceedings designed to trigger the reappointment process, to insure that it will not be neglected, and to inform the conservatee of his rights if it is—or is not—pursued by the conservator. (§ 5362.)

These provisions guarantee automatic termination of the conservatorship, or judicial review of the conservatee's disability, at least once each year. As we have seen, section 5364 permits him to obtain such judicial review, upon his interim petition for a "rehearing," at least once *during* any year. He is thus reasonably protected against "inappropriate, indefinite, and involuntary commitment," and his "individual rights" are protected, "through judicial review" at reasonable intervals, even under respondent court's interpretation of section 5364. That interpretation accordingly comports with the provisions of the Act which require the protections mentioned. (§ 5001, subds. (a), (d).)

The Act also provides that, with some stated exceptions, "[t]he procedure for establishing, administering and terminating conservatorship" of "gravely disabled" persons "shall be the same as that provided in Division 5 (commencing with Section 1701) of the Probate Code." (§ 5350.) By this reference, it gives a disaffected conservatee the right to appeal from an order appointing his conservator. (Prob. Code, § 2101.) The Legislature's grant of this right is not consistent with its permitting him (as petitioner's interpretation of § 5364 would have it) the overlapping right to commence de novo litigation of the same issues on the day after the order has been entered. In this respect and generally, petitioner's interpretation conflicts with conventional concepts of the finality of judgments.

We turn to the consequences which may follow from petitioner's interpretation. The LPS Act expressly provides that a proposed conservatee is entitled to a jury trial, of the issue whether he is "gravely disabled" in fact, when a petition for conservatorship is initially filed. (§ 5350, subd. (d).) It similarly provides that he is entitled to a jury trial, of the same issue, if and when his conservator petitions for reappointment at

the end of the first year, or of successive years, of the conservatorship. (§ 5362, subds. (a) and (b).)

Section 5364 does not expressly grant a conservatee the right to a jury trial of the issue upon his interim "petition . . . for a rehearing as to his status" filed pursuant to that section. The LPS Act refers to a "court hearing," and to a "jury trial," in such manner as to indicate—if somewhat vaguely—that the one is materially distinguishable from the other. (See § 5362, subd. (a); Cal. Conservatorships (Cont. Ed. Bar 1976 Supp.) § 8.43, pp. 116-117.) For both reasons, a conservatee's right to a jury trial upon his interim petition for rehearing is uncertain; one author views the right on that occasion as "not clear," but expresses his "opinion" that it exists. (Cal. Conservatorships, *op. cit.,* § 8.56, pp. 128-129.)[3]

If the right to a jury trial exists upon an interim petition for rehearing filed pursuant to section 5364, petitioner's interpretation of the time-interval element of the section would mean that a conservatee is entitled to a jury trial, of the same issue, not less than four times during each year (or so) of his conservatorship.[4] In the absence of any language in the Act

---

[3]The work here cited supports petitioner's literal construction of section 5364, which it quotes and discusses as follows: "Under this wording, it is possible for the conservatee to have two rehearings during the one-year period of conservatorship—*a first rehearing a month or two after the appointment* [of the conservator] *and a second rehearing six months later.*" (Cal. Conservatorships, *supra,* § 8.56, p. 128 [italics added].) Another authority supports respondent court's and real party's interpretation to the contrary: "During the entire course of the conservatorship, the patient has the right to judicial review of his or her status *(although no more often than once every six months)* [citing § 5364 by footnote] with automatic judicial review being required once per year [citing § 5361 by footnote]." (Note, *Civil Commitment Of The Mentally Ill In California: The Lanterman-Petris-Short Act* (1974) 7 Loyola L.A. L.Rev. 93, 102 [italics added; footnotes omitted except as indicated].)

[4]This possibility may be illustrated by the following hypothetical timetable: A petition for the appointment of a conservator for John Doe, alleging that he is a "gravely disabled" person, is filed in early January of a given year. Doe is entitled to a jury trial of the issue alleged, upon his demand, within 30 days. (§ 5350, subd. (d); § 5365.) A trial proceeds, a verdict that he is "gravely disabled" is returned, and a conservator is appointed accordingly, in February. Doe files a petition for rehearing forthwith, the process is repeated, and a verdict is returned and an appropriate order entered, in March. He files a second petition for rehearing six months later (which § 5364 clearly permits), the process is repeated once again, and a similar verdict and order are entered in October. The "automatic" termination procedure commences no later than December (§ 5361). Doe demands a jury trial (to which §§ 5350, subd. (d) and 5365 entitle him within 30 days), and a verdict of his continuing disability is returned (and an order reappointing the conservator is entered) in January. In the case of a conservatee who remains a "gravely disabled person," and subject to some variations, the annual cycle of four jury trials could continue indefinitely.

expressly permitting it, the prospect of virtually uninterrupted litigation of one issue, throughout the course of conservatorship, is in conflict with the legislative mandate that the Act is to be construed so as "[t]o provide individualized treatment, supervision, and placement services" to the conservatee (§ 5001, subd. (e)) and "to prevent duplication of services and unnecessary expenditures" in the pursuit of its objectives. (*Id.,* subd. (f).)

In light of all the considerations mentioned, we must conclude that respondent court's interpretation of section 5364 is correct. This result does not necessarily turn upon the narrow question whether the language of the statute is plain or ambiguous. ■ While it is generally true that ambiguity in a statute is a condition precedent to its interpretation, the "literal meaning" of its words "may be disregarded to avoid absurd results or to give effect to manifest purposes that, in light of the statute's legislative history, appear from its provisions considered as a whole." (*Silver* v. *Brown* (1966) 63 Cal.2d 841, 845-846 [48 Cal.Rptr. 609, 409 P.2d 689] and cases cited; *Leffel* v. *Municipal Court, supra,* 54 Cal.App.3d 569 at p. 572.)

■ A principal factor in support of petitioner's opposing interpretation is the concern of the Legislature, and of any court, with the rights and liberties of a conservatee who is confined under a commitment made pursuant to the LPS Act. (See § 5358.) We have seen that the six-month limitation imposed by respondent court's interpretation of section 5364, upon the conservatee's right to petition for an interim rehearing of his status as provided in that section, is both reasonable and consistent with the stated purposes of the Act in this regard. (See § 5350, subds. (a), (d).) If unreasonable consequences should ensue from it, he is entitled to seek habeas corpus relief at any time. (See Note, *supra,* 7 Loyola L.A. L.Rev. 93 at pp. 120-124; *In re Gonzales* (1971) 6 Cal.3d 346, 351-352 [99 Cal.Rptr. 17, 491 P.2d 809].)

The alternative writ of mandate is discharged. The petition is denied.

Christian, J., and Emerson, J.,* concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 26, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.