[Civ. No. 23945. Fourth Dist., Div. Two. Dec. 23, 1980.]

ROBERT BABER, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
BILL HILL, as Public Guardian, etc., Real Party in Interest.

## COUNSEL

Lawson & Hartnell and Bryan C. Hartnell for Petitioner.

No appearance for Respondent.

Alan K. Marks, County Counsel, Charles J. Larkin and Dawn Stafford, Deputy County Counsel, for Real Party in Interest.

## OPINION

**MORRIS, J.**—On November 16, 1979, Robert Baber, the petitioner, was found by a jury to be "gravely disabled."[1] Pursuant to Welfare and Institutions Code section 5350,[2] the Public Guardian of San Bernardino County, the real party in interest, was appointed conservator of petitioner's "person and estate." The petitioner was subsequently placed in a mental health facility for involuntary treatment.

In January 1980, the petitioner filed a petition for a rehearing as authorized by section 5364.[3] Prior to the rehearing, the court made procedural rulings adverse to the petitioner. It was held that there was no right to a jury trial, that the petitioner had the burden of producing evidence to show that he was no longer gravely disabled, and that the

---

[1]Welfare and Institutions Code section 5008, subdivision (h) provides the relevant definition of "gravely disabled": "[A] condition in which a person, as a result of [a mental disorder or] impairment by chronic alcoholism, is unable to provide for his or her basic personal needs for food, clothing, or shelter."

[2]Unless otherwise stated, all references are to the Welfare and Institutions Code.

[3]Section 5364 reads, in pertinent part: "At any time, the conservatee may petition the superior court for a rehearing as to his status as a conservatee. However, after the filing of the first petition for rehearing pursuant to this section, no further petition for rehearing shall be submitted for a period of six months."

petitioner had to prove that fact by a preponderance of the evidence. Petitioner contended then, as he does now, that he is entitled to a jury trial at his rehearing and that the public guardian should have the burden of proving beyond a reasonable doubt that the petitioner remains gravely disabled.

Further proceedings in the rehearing were continued while petitioner sought a writ of mandate from this court to overturn the trial court's procedural rulings. The petition for writ of mandate was denied. Petitioner then sought a hearing in the Supreme Court. The court denied the petition for hearing "without prejudice to the filing of a new petition for writ of mandate following a hearing and determination of the petition for rehearing pursuant to section 5364...." On June 27, the trial court, after a rehearing on the merits, affirmed the petitioner's status as a conservatee. The petitioner sought a writ of mandate in the Supreme Court. The writ petition was transferred to this court with directions to issue an alternative writ of mandamus. We issued the alternative writ and now consider the petition.

*Mootness*

■ Before reaching the merits of this petition, we must address the threshold issue of mootness. Under section 5361, the petitioner's conservatorship automatically terminated on November 16, 1980, one year after the conservator was appointed. Section 5361 allows the conservator to petition for reappointment for a succeeding one-year period, but the record does not disclose whether this has been done. If the conservator did petition for reappointment, the petitioner was then entitled to the same procedural safeguards that he had during the original conservatorship proceeding (i.e., a jury trial and the public guardian having the burden of proof beyond a reasonable doubt) (§ 5350, subd. (d); *Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1]), which is what he is now seeking for his rehearing. If the conservator did not petition for reappointment, the petitioner is entitled to his release from involuntary treatment. (§ 5361.) Thus, the questions presented here are technically moot.

We choose, however, not to dismiss the petition because of mootness. Because the issues in this case are of public interest, will continue to evade review, and are likely to recur, both in general and as to the petitioner specifically, we exercise our inherent discretion to resolve those issues. (*Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 876-877 [95

Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392]; *Conservatorship of Buchanan* (1978) 78 Cal.App.3d 281, 285-286 [144 Cal.Rptr. 241].)

*Discussion*

Petitioner's conservatorship was established under the Lanterman-Petris-Short Act (LPS). (§§ 5000-5466.) The public guardian was appointed his conservator pursuant to section 5350, which authorizes such appointments for those persons who are "gravely disabled as a result of mental disorder or impairment by chronic alcoholism." In determining the fact of grave disability during the appointment proceedings, the prospective conservatee is entitled by statute to a jury trial. (§ 5350, subd. (d).) The California Supreme Court has held that, additionally, constitutional considerations require that a unanimous jury be convinced beyond a reasonable doubt of the grave disability. (*Roulet, supra.*) A conservatorship established under section 5350 can last a maximum of one year. At the end of the year the conservator may petition to be reappointed for another one-year period. (§ 5361.) During the reappointment proceedings, the conservatee is afforded the same procedural rights as at the appointment proceedings. (§ 5350, subd. (d); *Roulet, supra.*)

The LPS Act also gives the conservatee an opportunity to end the conservatorship prior to the annual reappointment proceedings. He is entitled, at any time, but not more than once every six months, to petition for a rehearing. (§ 5364.) While many procedural questions regarding the proceedings to appoint or reappoint a conservator have been settled by statutory and case law, those same questions concerning the optional rehearing are not answered in the codes and have seldom been the subject of appellate litigation.

Petitioner's first claim is that he was wrongly denied a jury trial at his rehearing. He asserts that both the LPS Act and the Constitution give him that right. We have concluded that neither the LPS Act nor the Constitution creates a right to a jury trial at a rehearing pursuant to section 5364.

■ The LPS Act is silent on the issue of a jury trial at a rehearing. Petitioner, however, interprets this silence, in conjunction with an

amendment to the LPS Act which expressly *denies* a jury trial in another type of optional hearing,[4] as a legislative implication that a jury trial right *does* exist at a rehearing. (See Tieger & Kresser, *Civil Commitment in California: A Defense Perspective on the Operation of the Lanterman-Petris-Short Act* (1977) 28 Hastings L.J. 1407, 1432; Levine, Conservatorships for the Gravely Disabled in Cal. Conservatorships (Cont.Ed.Bar. Supp. 1980) § 8.56, p. 167.) This interpretation is unpersuasive. The express denial of the right to a jury trial in one type of hearing cannot be viewed as an intent not to deny such right in a similar type of hearing. In fact, just the opposite could be inferred.[5] The most reasonable position, however, is that the Legislature has not desired, or even thought, to address the issue of jury trials in section 5364 rehearings. If such be the case, this court, operating on the practical assumption that no statutory right to a jury trial exists until created by the Legislature, has no authority to mandate a jury trial in a section 5364 rehearing unless it is constitutionally required. As will be shown later, such a right is not constitutionally required.

Petitioner makes an alternative argument in support of his claimed statutory right to a jury trial. The LPS Act provides that "[t]he procedure for establishing, administering and terminating conservatorship under this chapter shall be the same as that provided" in those sections of the Probate Code that deal with probate conservatorships (§ 5350), unless the LPS Act provides otherwise. (§ 5350, subd. (f).) Since Probate Code Sections 1755 and 2006 allow jury trials in proceedings to appoint a conservator or terminate a conservatorship,[6] the petitioner

---

[4]Section 5357 allows a conservatee to be deprived of certain rights (e.g., the right to refuse treatment and the right to vote). Section 5358 allows a conservator to be granted the power to place his conservatee in a hospital and require him to receive treatment. In 1976, the LPS Act was amended (Stats. 1976, ch. 905, § 4, p. 2079) by adding section 5358.3. That section allows a conservatee to "petition the court for a hearing to contest the rights denied under section 5357 or the powers granted to the conservator under section 5358." The statute also states that "[a] hearing pursuant to this section shall not include trial by jury."

[5]By following a logical rule of statutory construction, it could be assumed that the Legislature intended to deny jury trials in *all* optional hearings and rehearings under the LPS Act. As stated by one authority: "By referring to other similar legislation, a court is able to learn the purpose and course of legislation in general, and by transposing the clear intent expressed in one or several statutes to a similar statute of doubtful meaning, the court not only is able to give effect to the probable intent of the legislature, but also to establish a more uniform and harmonious system of law." (2A Sutherland, Statutory Construction (4th ed. 1973) § 53.03, p. 346.)

[6]Probate Code section 1755 allows the conservator, the conservatee, or a relative or friend of the conservatee to petition the superior court to terminate the conservatorship.

contends that such right is made applicable to section 5364 rehearings by section 5350. This argument has no merit. A section 5364 rehearing has no counterpart in the probate conservatorship statutes. Probate conservatorships are openended, terminating only when such is ordered by the court or when the conservator dies. (Prob. Code, § 1755.)[7] Whereas LPS conservatorships automatically terminate at the end of one year. No petition by the conservatee is required. (§ 5361.) Thus, Probate Code sections 1755 and 2006 are analogous only to sections 5350 and 5361, which provide for the establishment, reestablishment and termination of LPS conservatorships. A section 5364 rehearing is a proceeding peculiar to LPS conservatorships, for which no probate conservatorship procedure can be deemed to apply.

Additionally, a convincing argument can be made that mandating a jury trial for section 5364 rehearings would frustrate the fundamental intent underlying the LPS Act. This was persuasively pointed out, albeit in dictum, by the court in *Henreid* v. *Superior Court* (1976) 59 Cal. App.3d 552, 557-558 [130 Cal.Rptr. 892]: "If the right to a jury trial exists upon an interim petition for rehearing filed pursuant to section 5364, . . . a conservatee is entitled to a jury trial, of the same issue, not less than four times each year (or so) of his conservatorship. In the absence of any language in the Act expressly permitting it, the prospect of virtually uninterrupted litigation of one issue, throughout the course of conservatorship, is in conflict with the legislative mandate that the Act is to be construed so as '[t]o provide individualized treatment, supervision, and placement services' to the conservatee (§ 5001, subd. (e)) and

---

It also provides that "[t]he court shall hear and determine the matter according to the laws and procedure relating to the trial of civil action, including trial by jury if demanded."

Probate Code section 2006 provides that "[i]n any proceeding for the appointment of a conservator . . . or for termination of a conservatorship . . . [t]he court shall hear and determine the matter according to the laws and procedure relating to civil actions, including trial by jury if demanded." It should be noted that the Legislature recently recodified the law concerning probate conservatorships. Effective January 1, 1981, Probate Code section 1827 will provide the right to a jury trial at the establishment of a conservatorship (Stats. 1979, ch. 726, p. 2353 and Probate Code section 1863, subdivision (a) will allow a jury trial after the filing of a petition for the termination of a conservatorship (Stats. 1979, ch. 726, p. 2357).

[7]New Probate Code section 1860, effective January 1, 1981, makes a conservatorship continuous "until terminated by the death of the *conservatee* or by order of the court." (Stats. 1979, ch. 726, p. 2356, italics added.)

'to prevent duplication of services and unnecessary expenditures' in the pursuit of its objectives. (*Id.*, subd. (f).)" (Fn. omitted.)[8]

█ Petitioner also asserts a constitutional right to a jury trial at a section 5364 rehearing, both on equal protection and due process grounds. We find neither constitutional principle violated by the denial of a jury trial at such a rehearing.

Petitioner's equal protection claim is based in part on a comparison between the LPS conservatorships and the 90-day confinements of imminently dangerous persons under the LPS. Act.[9] Before being confined for the 90-day period, a person is entitled to a jury determination that he is imminently dangerous (§ 5302.) The confinement is then limited to 90 days, unless a subsequent petition is filed to initiate a second 90-day confinement. (§ 5304.) No third 90-day confinement may be ordered. (§ 5304; *Roulet, supra,* 23 Cal.3d at p. 233, fn. 11; *People* v. *Feagley* (1975) 14 Cal.3d 338, 358, fn. 14 [121 Cal.Rptr. 509, 535 P.2d 373].) Petitioner contends that since an imminently dangerous person is entitled to a new jury trial after his first 90-day confinement,[10] an LPS conservatee must be given the same procedural rights (i.e., a jury trial at a § 5364 rehearing). In support of this contention, he cites

---

[8]At least one author has been convinced by the *Henreid* language. (Compare Levine, Conservatorships for the Gravely Disabled in Cal. Conservatorships (Cont.Ed.Bar Supp. 1980) § 8.56, p. 167 with Cal. Conservatorships (Cont.Ed.Bar Supp. 1976) § 8.43, pp. 116-117, quoted in *Henreid, supra,* 59 Cal.App.3d at p. 557.)

[9]Under the LPS Act, any person who "is a danger to others, or to himself or herself, or gravely disabled" because of a mental disorder or inebriation may be detained involuntarily for 72 hours for "treatment and evaluation." (§§ 5150, 5170.) At the end of the 72-hour period, the person may be "certified" for "14 days of involuntary intensive treatment" if an evaluating staff finds him to be, "as a result of mental disorder or impairment by chronic alcoholism, a danger to others, or to himself; or gravely disabled." (§ 5250.) After the 14 days of treatment, the person may be confined for another 90 days "for further treatment" if he has attempted or inflicted physical harm upon another person and if he, "as a result of mental disorder, presents an imminent threat of substantial physical harm to others." (§ 5300.)

[10]Section 5304 provides that the "new petition for postcertification treatment shall be filed in the superior court wherein the original petition for postcertification treatment was filed." Section 5302 states that "[a]t the time of filing a petition for postcertification treatment the court shall advise the person named in the petition of ... his right to demand a jury trial." Apparently, no appellate court has yet decided whether "a petition" in section 5302 refers to both the new and original petitions for postcertification treatment, or solely to the original petition. For the purposes of this appeal, however, we assume that there is a right to a jury trial before the second 90-day confinement.

that portion of *Roulet* that states that it would violate equal protection if a gravely disabled person could become a conservatee after a less than unanimous jury verdict, since unanimous jury verdicts are required in commitment proceedings for imminently dangerous persons. (23 Cal.3d at p. 231.) The *Roulet* court, however, was concerned with a problem that is absent in this case—that the procedures for *commitment* were less stringent for a gravely disabled person than for an imminently dangerous person. Today, because of *Roulet*, the petitioner has the same procedural rights when his conservatorship is established or reestablished as does a person who is being committed as an imminently dangerous person. But, once commitment has occurred, the constitutional need for identical procedures ceases. Indeed, it would be inconsistent with the intent of the LPS Act. The Legislature has recognized that different types of mental illnesses exist and has created a coherent scheme whereby gravely disabled and imminently dangerous persons can be channeled into different types of treatment systems. The imminently dangerous person is to receive intensive treatment during a short period of time, while the gravely disabled person is subject to longer-term treatment. Thus, equal protection requires that the original channeling (i.e., commitment) be undertaken pursuant to consistent procedures. Subsequent legal proceedings need not conform to those procedures of the other treatment system, but to the due process standards unique to each system.

Petitioner's other equal protection argument also fails. He claims that greater procedural rights are given to a probate conservatee than an LPS conservatee, since a jury trial is allowed whenever a probate conservatee petitions to have his conservatorship terminated. (Prob. Code, § 1755.) This is unconvincing. If anything, it is the LPS conservatee who has the greater procedural safeguards. An LPS conservatorship can be established only upon showing that such is necessary beyond a reasonable doubt. (*Roulet, supra.*) The standard of proof for the establishment of a probate conservatorship, however, is only "clear and convincing proof." (*Conservatorship of Sanderson* (1980) 106 Cal. App.3d 611, 620 [165 Cal.Rptr. 217].) Additionally, an LPS conservatorship terminates automatically after one year (§ 5361), while a probate conservatorship has no fixed termination date (Prob. Code, § 1755).

■ Nor has the petitioner shown that the absence of a jury trial at a section 5364 rehearing violates principles of due process. As our Su-

preme Court has stated, "What is due process depends on circumstances. It varies with the subject matter and the necessities of the situation. [Citation.] Its content is a function of many variables, including the nature of the right affected, the degree of danger caused by the proscribed condition or activity, and the availability of prompt remedial measures." (*Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247, 254 [53 Cal.Rptr. 673, 418 P.2d 265]; see also *In re Bye* (1974) 12 Cal.3d 96, 103 [115 Cal.Rptr. 382, 524 P.2d 854], cert. den. (1975) 420 U.S. 996 [43 L.Ed.2d 679, 95 S.Ct. 1437]; *Thorn* v. *Superior Court* (1970) 1 Cal.3d 666, 673 [83 Cal.Rptr. 600, 464 P.2d 56].) The LPS Act represents a delicate balance "'between the medical objectives of treating sick people without legal delays and the equally valid legal aim of insuring that persons are not deprived of their liberties without due process of law.'" (*Thorn, supra*, 1 Cal.3d at pp. 673-674.) The LPS conservatee gets an annual review of his conservatorship, where the conservator has the burden of convincing a unanimous jury beyond a reasonable doubt that the conservatee is gravely disabled. The conservatee has the additional safeguard of being able to initiate up to two rehearings on his status each year. The first rehearing can be demanded "at any time." In light of the procedural rights, we hold that due process does not require that a conservatee be given a jury trial at the rehearings.

■ At the rehearing, the petitioner was not only denied a jury trial, but was also shouldered with the burdens of producing evidence and of proving by a preponderance of the evidence that he was no longer gravely disabled. Petitioner claims that the public guardian should have had the burdens of producing evidence and of proving beyond a reasonable doubt that the petitioner remained gravely disabled. We disagree. There are present no considerations that require a deviation from the traditional rules regarding the burdens of proof and of producing evidence which were applied at petitioner's rehearing.

"The burden of producing evidence as to a particular fact is initially on the party with the burden of proof as to that fact." (Evid. Code, § 550, subd. (b).) Generally, "a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief ... that he is asserting." (Evid. Code, § 500.) In LPS conservatorship proceedings, the "fact" to be proved is either the existence or nonexistence of a grave disability. Thus upon a petition by the Public Guardian seeking to establish or reestablish an LPS conservatorship, the Public Guardian has the burden of proof and the initial burden of producing evidence to show the existence of grave disability. Similarly,

upon a petition for rehearing which asserts that the conservatee is no longer gravely disabled, those burdens of showing the nonexistence of grave disability should be on the conservatee.

Since these rules must be followed "[e]xcept as otherwise provided by law" (Evid. Code, § 500), what petitioner seeks is an exception to the normal operation of the rules. Again, as with the jury trial issue, no statute or court decision touches upon the issue of the initial burden of producing evidence at a section 5364 rehearing. *Roulet* persuasively demonstrates why this burden must be carried by the Public Guardian at establishment or reestablishment proceedings,[11] but such considerations are not relevant at a rehearing. At a conservatorship establishment or reestablishment trial, it must be shown that the potential conservatee is gravely disabled; that he cannot provide for his basic personal needs for food, clothing, or shelter. At a rehearing, the only fact needed to be shown is that, since the prior establishment or reestablishment of the conservatorship, the conservatee's situation has changed so that he is no longer gravely disabled. Thus, just as a potential conservatee is not required to prove a negative fact (i.e., that he is not gravely disabled) at a conservatorship establishment or reestablishment trial, so should the Public Guardian not be required to prove a negative fact (i.e., that the conservatee's situation has not changed) at a section 5364 rehearing.

Nor do equal protection or due process require a different result. We reject petitioner's arguments to the contrary for the same reasons that we have rejected his constitutional claim to a jury trial at his rehearing.[12]

---

[11]The Supreme Court noted that, at the trial to establish a conservatorship, "the potential conservatee is placed at an initial disadvantage because he or she is likely to be confined prior to the trial .... These constraints limit the individual's ability to communicate freely with counsel, witnesses, and others in preparation for trial." (23 Cal.3d at p. 234.)

[12]Although neither the petitioner nor the real party in interest has raised the point, we feel it necessary to note language in *Roulet* that could arguably be interpreted as requiring a jury trial and proof beyond a reasonable doubt of a conservatee's continued grave disability at a section 5364 rehearing. *Roulet* held that "[t]he due process clause of the California Constitution requires that proof beyond a reasonable doubt and a unanimous jury verdict be applied to conservatorship proceedings under the LPS Act." (23 Cal.3d at p. 235.) The court later stated that, "[t]he holding in this case shall be applied only to cases not yet final as of the date on which this decision becomes final. In light of Welfare and Institutions Code sections 5361 *and 5364*, this court is satisfied that final judgments establishing conservatorships over gravely disabled persons need not be disturbed, since *the new rules announced in this case will, at any rate, shortly*

The petition for writ of mandate is denied.

Gardner, P. J., and McDaniel, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied February 27, 1981. Bird, C. J., was of the opinion that the application should be granted.

---

*be available to all conservatees.*" (*Id.*, at p. 235, fn. 18, italics added.) While this language could arguably be interpreted to mean that the procedural rules set forth in *Roulet* are to apply to all subsequent section 5364 rehearings, it is more reasonably interpreted to signify that a conservatee could validly complain, at a subsequent section 5364 rehearing, that the conservatorship was established or reestablished prior to *Roulet* without the *Roulet* procedural rules. In any event, the issue of rehearing procedures was not before the court in *Roulet*.