Filed 9/7/22  Conservatorship of P.D. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| Conservatorship of the Person of P.D. | |
| KERN COUNTY PUBLIC CONSERVATOR, | F083466 |
| Petitioner and Respondent, | (Super. Ct. No. MI006622-05) |
| v. | **OPINION** |
| P.D., | |
| Objector and Appellant. | |

### THE COURT[*]

APPEAL from orders of the Superior Court of Kern County.  Marcos R. Camacho, Judge.

Rachel Lederman and Alexsis C. Beach, under appointment by the Court of Appeal, for Objector and Appellant.

Margo A. Raison, County Counsel, and Kyle W. Holmes, Deputy County Counsel, for Petitioner and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P. J., Detjen, J. and Meehan, J.

Appellant P.D. challenges the trial court's decision to place her under the authority of a conservatorship pursuant to the Lanterman-Petris-Short Act (LPS Act). (Welf. & Inst. Code, § 5000 et seq.)[1] Appellant believes the decision by the trial court must be reversed because she was not properly advised of her right to a jury trial. In the alternative, appellant believes substantial evidence does not support the findings made by the trial court, requiring a reversal of the order imposing the conservatorship. Our review of the record leads us to conclude the orders imposing the conservatorship must be reversed.

## PROCEDURAL SUMMARY

On February 26, 2021, a petition seeking the appointment of a conservator for appellant under the LPS Act was filed. Letters establishing a temporary conservatorship were issued on March 1, 2021, appointing the Kern County Public Conservator while the petition was pending. At the time set for the contested hearing on the petition, appellant's mother stated her willingness on the record to offer third party assistance to appellant. Based on this representation by appellant's mother, the petition was dismissed on April 28, 2021, and the temporary conservatorship was terminated.

On August 9, 2021, a new petition seeking the appointment of a conservator for appellant was filed. The Kern County Public Conservator was again appointed the temporary conservator on August 10, 2021, while the petition was pending. At the initial hearing on this new petition held on September 8, 2021, counsel for appellant stated "Ms. [D.]'s requesting a bench trial," and waived time. Appellant was not present at this initial hearing. A contested hearing on the petition was eventually held on October 20, 2021, with appellant in attendance. At the conclusion of that hearing, the trial court issued an

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise specified.

order creating a conservatorship for appellant for a period of one year. A notice of appeal was thereafter filed on behalf of appellant on October 22, 2021.

## FACTUAL SUMMARY

Roxanne Martinez, a deputy conservator, testified she had received referrals for appellant "on and off since 2019." Relevant to this appeal, Martinez stated she received a referral for appellant on July 30, 2021, from Good Samaritan Hospital. Among the reasons for the referral was that appellant had stopped taking her medications. Martinez stated appellant was placed in a board and care facility after the referral, and she had shown improvement.

Martinez also offered that in her role as a deputy public conservator, she evaluates individuals assigned to determine whether a conservatorship is required. Martinez believed that at the time of the referral in July 2021 appellant was gravely disabled and met the criteria for a conservatorship under the LPS Act. Martinez further explained:

> "[S]he is unable to verbalize [any] viable plan for her basic needs for food, clothing and shelter. She does not have any viable plan on how she would continue engaging in her mental health treatment and taking her medications. Her primary plan is to accept third party assistance from her mom, but that was offered and tried [in] the past, recent past, and it was unsuccessful. So I do believe she is unable to meet those basic needs at this time and remains gravely disability."

Martinez noted while appellant seemed to have sources of income that could help her live on her own, prior attempts to live on her own, or with her mother, were not successful. Martinez believed appellant lacked a viable plan that she could follow for how to function successfully in the future.

Testimony provided by Dr. Jagdeep Garewal, a psychiatrist, followed. Garewal stated appellant was his patient and had been diagnosed with "Schizoaffective [D]isorder Bipolar [T]ype." Garewal testified that while he would not need to make further adjustments in appellant's medications, he was not confident appellant would follow

3

through with the constant lab testing necessary while using this particular medication. Garewal emphasized the medications appellant was prescribed require constant testing, and he was not confident appellant's mother would accept responsibility for making sure appellant followed through with the testing.

Appellant next testified on her own behalf. Appellant explained her plan to pay for her living expenses and get regular lab work done. Appellant explained that she planned to obtain health insurance so she could see a doctor regularly and take care of the required blood testing. Appellant believes she can pay for the insurance, out of pocket costs for medication, food and rent, using her Social Security benefits. Appellant testified she has signed up for classes through College Community Services and believes they will provide her with the transportation needed to get to the required lab appointments. Appellant attributed problems she had in the past with making doctor appointments and getting lab work done to the lack of insurance and a lack of communication with the doctor's office, as they were communicating with appellant's mother instead of with her directly.

## DISCUSSION

In her challenge to the judgment of the trial court, appellant raises only two issues—whether the failure of the trial court to advise her of the right to a jury trial on the record renders the judgment invalid, and whether the findings of the trial court are supported by substantial evidence.

## I. The Trial Court Was Required to Specifically Advise Appellant of Her Right to a Jury Trial

A review of the entire record reveals that the trial court never specifically advised appellant of her right to ask for a jury trial before proceeding with the bench trial. The question we must resolve is whether this deals a fatal blow to the judgment entered in this case, even though appellant's trial counsel stated to the court that, "Ms.[D.]'s requesting

4

a bench trial." If we conclude there was a failure to advise appellant of her right to a jury trial, we must then consider whether this error can be overcome.

This court's view on this issue is represented in *Conservatorship of Kevin A.* (2015) 240 Cal.App.4th 1241 (*Kevin A.*). When reviewing the reappointment of an LPS conservatorship, this court referenced section 5350 and its reliance on Probate Code provisions addressing conservatorships. (*Kevin A.*, at p. 1249.) Specifically applicable here, the *Kevin A.* court cited Probate Code section 1828, subdivision (a)(6), which requires a trial court to inform the proposed conservatee of the right to oppose the proceeding, to have the matter tried by a jury, to be represented by counsel, and to have counsel appointed if the proposed conservatee is unable to retain legal counsel. (*Kevin A.*, at p. 1249.) The *Kevin A.* court also cited subdivision (b)(1)–(3), of Probate Code section 1828, and its requirement the trial court explore with the conservatee their opinion about a conservatorship, the proposed conservator, and any limitations that might impact the conservatee's legal capacity to be involved in the decision. (*Kevin A.*, at p. 1249.)

However, these Probate Court provisions were not the only factors guiding the *Kevin A.* court. The court also engaged in an analysis of two recent California Supreme Court opinions considering the same issue in the context of mentally disordered offenders (MDO). Both cases held that the relevant Penal Code statute required a trial court to advise an MDO defendant, on the record, of the right to a jury trial. (See *People v. Blackburn* (2015) 61 Cal.4th 1113, 1124, *People v. Tran* (2015) 61 Cal.4th 1160, 1163,1166 [citing Pen. Code, § 2972, involving a plea of guilty by reason of insanity].) Even though these cases were decided in the context of criminal proceedings, the *Kevin A.* court noted the holdings in those cases must be considered when reviewing LPS conservatorships. (*Kevin A.*, *supra*, 240 Cal.App.4th at p. 1248.)

The lack of an express waiver from the conservatee of the right to a jury trial was especially troublesome in *Kevin A.*  Specifically, the conservatee in *Kevin A.* made his desire for a jury trial known to the court on the record, despite his attorney's efforts to waive a jury trial on his behalf.  (*Kevin A.*, *supra*, 240 Cal.App.4th at pp. 1246–1247.)  Despite the conservatee's repeated insistence he had a right to a jury trial, the court accepted the attorney's waiver  based on its understanding of the law allowing an attorney to make such a waiver on behalf of a client *if it was in their best interest*.  (*Id.* at p. 1247, emphasis added.)  On this record, the *Kevin A.* court concluded the attempt to waive the right to a jury trial by the attorney over the express wishes of his client required reversal.  (*Id.* at p. 1253.)

Since *Kevin A.* was decided, various districts have addressed the same issue in published opinions.  Most of these opinions have reached conclusions consistent with the decision in *Kevin A.*  Only one published opinion has taken a slightly different approach, focusing on the seriousness of the error, and whether the failure to advise a conservatee of their right to a jury trial on the record can be considered harmless.

Among the most recent published opinions is one from the First District Court of Appeal in *K.R. v. Superior Court* (2022) 80 Cal.App.5th 133 (*K.R.*).  The *K.R.* court emphasized there was consistency among appellate courts on the need to personally advise potential conservatees in LPS proceedings of the statutory right to a jury trial.  (*K.R.*, at p. 143.)  In *K.R.*, the conservatee was never advised of his right to a jury trial before an initial hearing, where evidence was presented.  (*Id.* at p. 137–138.)  However, following another hearing, the conservatee's attorney made a specific request for a jury trial pursuant to section 5350, subdivision (d)(1).  (*Id.* at p. 138.)  The court denied that request (*ibid.*), citing case law holding, "no statutory right to a jury trial exists until created by the Legislature, […] unless it is constitutionally required."  (See *Baber v. Superior Court* (1980) 113 Cal.App.3d 955, 961.)  The *K.R.* court rejected this

conclusion focusing on the use of both "hearing" and "trial" in section 5350, subdivision (d)(1), and the fact the right to a jury applies only to a trial. (*K.R.*, at pp. 140.)

The *K.R.* court ultimately concluded the failure to advise a potential conservatee of the right to a jury trial must result in automatic reversal and not be the subject of a harmless error review. (*K.R.*, *supra*, 80 Cal.App.5th at p. 143.) The *K.R.* court felt this conclusion was consistent with the opinion in *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378 from the Second District Court of Appeal, where there was an advisement on the right to testify, but no advisement on the right to a jury trial. (*Heather W.*, at p. 384.) This set of facts led the *Heather W.* court to conclude the failure to advise a conservatee of their right to a jury trial on the record could not be considered harmless without also showing there was substantial evidence the conservatee lacked the capacity to agree to such a waiver. (*Heather W.*, at p. 384, citing *Kevin A.*, *supra*, 240 Cal.App.4th at p. 1252.)

The one case that seems to take a slightly different approach is from the Sixth District Court of Appeal. In *Conservatorship of C.O.* (2021) 71 Cal.App.5th 894, 908–909 (*C.O.*), the court held while a trial court must advise an individual on the record of the right to have the establishment or reestablishment of a conservatorship decided by a jury, absent facts suggesting the conservatee's counsel lacked actual authority, disregarded the client's wishes*, or that the conservatee did not have knowledge of the right to a trial by jury*, counsel *could* waive the right to a jury trial on behalf of the conservatee. (*Id.* at p. 911, emphasis added.) The *C.O.* court specifically noted, " '[t]he Probate Code does not require a jury trial or an express waiver of a jury …,' " only notice of the availability of this right. (*Id.* at p. 910, citing Prob. Code, § 1828.)

7

In *C.O.*, while there was no advisement of the right to a jury trial on the record from the judge, the following presentation was made by the attorney representing the C.O. at the initial hearing:

> " 'I have spoken to all of my clients, have informed them of their right to be present, the right to have a court—a jury trial, a court trial, or a summary hearing. And unless otherwise stated, they've waived these rights.'
>
> "C.O.'s attorney informed the trial court he would get C.O., who was 'right outside.' Once C.O. was in the courtroom, his attorney stated (in C.O.'s presence): 'Your Honor, I've had a chance to speak with [C.O.] a couple of times before today's court hearing. And at this time [C.O.] is requesting a court trial. It looks like we have discussed the possibility of doing that on May 23rd [2019]. And that would be our request.' " (*C.O., supra*, 71 Cal.App.5th at p. 902.)

The court stated the question of whether there was a waiver of the right to a jury trial was a question of fact. (*C.O.*, at p. 915.) The *C.O.* court concluded these representations by the attorney to the court while in C.O.'s presence at the initial hearing, C.O.'s failure to ask for a jury trial while attending the trial, and the lack of evidence showing C.O. did not understand the representations made by his attorney, constituted substantial evidence C.O. "knowingly and intelligently" waived his right to a jury trial. (*Ibid.*) On the basis of this record, the *C.O.* court concluded an automatic reversal was not necessary and a harmless error test could be applied. (*C.O.*, at p. 919.)

We see no reason to abandon the approach taken in *Kevin A.* at this time, given the facts of this case. The facts in *C.O.* provided much more evidence the conservatee had been advised of his right to a jury trial. For instance, the appellant in *C.O.* was present in the courtroom with his attorney when the right to a jury trial was being discussed. (See *C.O., supra*, 71 Cal.App.5th at p. 902.) In this case, P.D. was not present when her attorney made the representation to the court that she was requesting a bench trial. We also reach this conclusion in recognition of *People v. Sivongxxay* (2017) 3 Cal.5th 151, 167, in which the California Supreme Court again emphasized the importance of the need

8

to advise defendants of their right to a jury trial on the record. This language has been cited with approval in several opinions considering LPS Act petitions. (See, e.g., *Conservatorship of Joanne R.* (2021) 72 Cal.App.5th 1009, 1020 [in which the court's advisement was found adequate even though the conservatee only waived the right to a jury trial after learning there would be a delay of nine months before a jury could be seated].)

## A. Application

The record provided in this case fails to show that appellant was ever advised of her right to a jury trial on the record. At the first hearing on the conservatorship petition on September 8, 2021, counsel for appellant first acknowledged that appellant was not present at the hearing, but then went on to state "Ms. [D.]'s requesting a bench trial." Appellant was again not present for an October 6, 2021, hearing when her attorney requested a continuance to complete his investigation. Appellant did not make an appearance in the case until the contested hearing held on October 20, 2021, when she testified. The issue of her choice of a bench trial versus a jury trial was not addressed with appellant at any time on the record.

Again, the facts in *C.O.* provided much more evidence supporting the conclusion the conservatee had been advised of his right to a jury trial. (See *C.O.*, *supra*, 71 Cal.App.5th at p. 902.) The mere statement "Ms. [D.]'s requesting a bench trial," in this case offers nothing more than a suggestion that appellant might have been aware of her right to a jury trial.

As set out in *Kevin A.*, *Blackburn* and *Tran* considered statutory language consistent with the LPS Act, which had the same underlying goal, i.e., protecting the public and treating severely mentally ill individuals. (*Kevin A.*, *supra*, 240 Cal.App.4th at pp. 1248, 1250.) Therefore, the failure to advise appellant of her right to a jury trial can only be excused if there was substantial evidence in the record appellant lacked the

9

capacity to waive such a right. (*Id*. at pp. 1250–1251.) No finding was made by the trial court that appellant lacked the capacity to decide between a jury trial or a bench trial, and no evidence addressing that question was specifically offered into the record.

Because a reversal is required in this matter, we will not address appellant's remaining contentions in this appeal.

## **DISPOSITION**

The orders granting the petition for an LPS Act conservatorship are reversed.