Filed 8/27/24  Conservatorship of the Person and Estate of J.R. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

<table>
<tr><td>Conservatorship of the Person and Estate of J.R.</td><td></td></tr>
<tr><td>PUBLIC GUARDIAN OF DEL NORTE COUNTY,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>J.R.,<br><br>    Objector and Appellant.</td><td>A168239<br><br>(Del Norte County<br>Super. Ct. No. CVSM22-4000)</td></tr>
</table>

J.R. appeals from the trial court's May 17, 2023 order reappointing respondent Public Guardian of Del Norte County (public guardian) conservator of his person and estate pursuant to the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code, § 5000 et seq.).  The conservatorship order expired by operation of law during the pendency of this appeal.  Moreover, there has been further activity involving the conservatorship since the appeal was filed, activity that shows we cannot provide J.R. any effective relief.  We therefore dismiss the appeal as moot.[1]

---

[1] We note that the parties requested oral argument in response to notices sent by the court's clerk as a matter of course when the appeal was fully briefed.  A party has the right to oral argument in any appeal

1

## BACKGROUND

On February 15, 2023, the public guardian filed a petition for reappointment as the conservator of J.R.'s person and estate pursuant to Welfare and Institutions Code section 5361, alleging that the public guardian had previously been appointed conservator on March 18, 2022, and that J.R. was still gravely disabled and unable to provide for his basic needs.

A hearing on the petition was held on March 17. J.R. participated over Zoom, and was represented by Joseph Futrell. At the beginning of the hearing, J.R. asked to address the trial court, stating that he had "fired Joseph Futrell because he's not in my best interest and it's conflict of interest against me," had hired a new attorney named "Mike Buell" who was "in Toronto," and that he "want[ed] a new lawyer besides Futrell because Futrell is trying to fuck me over." After J.R. asked "Can I get a new lawyer?," the trial court responded "[w]hen your attorney gets in touch, we'll deal with that." J.R then objected to the renewal of the conservatorship and requested a jury trial, and the court set a trial date of May 10.

On May 3, the public guardian filed a motion to approve J.R.'s remote appearance for his jury trial. Relying on Probate Code 1825, subdivision (a)(2), which provides that "[t]he proposed conservatee shall be produced at the hearing except . . . (2) [w]here the proposed conservatee is unable to attend the hearing by reason of medical inability," the public guardian argued that "[d]ue to his major neurocognitive disorder with behavioral

" '*considered on the merits* and decided by a written opinion.' " (*Moles v. Regents of University of California* (1982) 32 Cal.3d 867, 871, italics added; accord, *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1254–1255.) Because we dismiss the appeal without reaching the merits, the parties have no right to oral argument, and which we find to be unnecessary to our dismissal of the appeal as moot.

2

disturbance, it is unsafe to transport [J.R.] from . . . Merced CA, to Crescent City for trial." The motion attached a letter from Dr. Christina Stuart, who stated that "[J.R.] has a history of aggressive and assaultive behavior that poses both a danger to himself and others, particularly when under the influence of methamphetamine. He is susceptible to victimization from others when in a less supervised and unlocked setting," and that "I have been informed by his conservator that the county is not able to provide a supervised environment, if his court appearance is delayed and an overnight stay is required. This further elevates the risk of [J.R.] inadvertently acting to harm himself or others." Dr. Stuart recommended that J.R. "be given approval to appear in court through Zoom or other related software programs." The motion also attached a declaration from Jennifer K. Coats, the Program Manager and the Assistant Public Guardian for Del Norte County, noting that J.R.—a "large middle-aged man, about 6 [feet,] 6 [inches] tall" —was currently housed in a locked psychiatric facility about 10 hours by car from Crescent City, and that the two options for transport were to have J.R. "leave the evening before trial at approximately 9:00 p.m. and arrive the morning of trial," causing him and the transport team to be awake for 24 hours, or to "pay for a hotel and bring the conservatee here the day prior," presenting a "high risk that [J.R.] would elope if he were left alone at a hotel the night before the trial or the night after."

A hearing was held on May 5, at which J.R.'s counsel waived his appearance, and at which the court, after noting that J.R.'s March 17 appearance was "of concern," and that "the likelihood of him . . . escaping, for lack of a better word, and possibly resulting in harm to him" was a "legitimate concern," granted the motion for remote appearance.

3

Jury trial on the petition took place on May 17, with J.R. present over Zoom. At the beginning of the hearing, the court asked J.R. "Do you agree that we can proceed with you by way of Zoom?," to which J.R. replied "No." J.R.'s counsel indicated that J.R. objected to the finding that he was medically unavailable to preserve the right to appeal. After a colloquy in which the trial court attempted to explain that J.R. could either proceed with the trial and appear over Zoom or have it postponed so that he could be personally present, J.R. stated "[w]e can proceed today," "I want to do it now," and "I would rather be there personally" but "I can do it today." The court concluded that J.R. had waived his right to a personal appearance and indicated it would "stand[] by my earlier decision that the Zoom appearance is appropriate."

The matter then proceeded to trial. Dr. Christina Stuart, one of J.R.'s treating psychiatrists, opined that J.R. suffered from schizoaffective disorder, bipolar type, and was gravely disabled. Deputy Public Guardian Jamie Hayden testified that J.R. had been making progress in his treatment, and that she had spoken to J.R.'s father some four months prior, and although his father was "very happy that [J.R.] is getting the care that he needs," he was unable to care for him. Finally, J.R. testified on his own behalf, denying that he had a mental illness and indicating that if the conservatorship were lifted, he would live in "the modular home park across the street from the AIDS clinic . . . . I live in Number 8. And I own the whole modular home park. I bought it from Queen Elizabeth."

Later that afternoon, the jury found that J.R. was presently gravely disabled due to a mental disorder. The court then reappointed the public guardian as conservator of J.R.'s person and estate, and imposed special disabilities denying J.R.: "(a) The privilege of possessing a license to operate

4

a motor vehicle; (b) The right to enter into contracts; (d) The right to refuse routine medical treatment that is specifically related to the proposed conservatee's grave disability, including the administration of psychotropic medication; (e) The right to refuse routine medical treatment that is unrelated to the proposed conservatee's grave disability; [and] (f) The right to have control of any firearm or any other deadly weapon."

On June 22, J.R. filed a notice of appeal.

## DISCUSSION

On March 25, 2024, J.R. filed his opening brief, asserting three arguments, that the trial court (1) violated his right to be personally present at his trial under the due process clause and Probate Code section 1825; (2) erred in failing to conduct a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) after J.R. expressed a desire to fire his court-appointed attorney; and (3) failed to make the required findings and identify the supporting evidence when it imposed the special disabilities included in its written order. On April 24 the public guardian filed its respondent's brief, and on May 20, J.R. filed a reply.

The conservatorship order on appeal expired automatically on May 17, after the respondent's brief was filed, and we requested supplemental briefing from the parties on the issue of whether this appeal should be dismissed as moot. (See Welf. & Inst. Code § 5361, subd. (a); *Conservatorship of K.Y.* (2024) 100 Cal.App.5th 985, 988 (*K.Y.*) ["An LPS conservatorship appointment or reappointment order lasts for one year only, by operation of law"].) [2]

---

[2] In this case, counsel for J.R. sought four extensions of time to file the opening brief, which extended the briefing schedule by approximately three months. Without this additional time in preparing the opening brief, the

5

J.R.'s supplemental brief appears to concede this his appeal is "technically moot," but makes three arguments that we should nevertheless decide it on the merits. First, he argues that there is a "dearth of case law" on the questions of the "constitutional and statutory right of a prospective conservatee to attend his or her hearing in person," and the "definition of 'medical inability' as that term is used in Probate Code, section 1825, subdivision (a)(2)." Second, he argues that despite the expiration of the conservatorship order, he will continue to suffer social and legal consequences from the conservatorship, including stigma on his reputation, and difficulty obtaining or maintaining a license to practice law, teach, or drive. Finally, he argues that depriving him of his right to appeal would violate his right to due process, noting that he has a statutory right to appeal the conservatorship order (Prob. Code, § 1301, subd. (a)) and observing that due process protects other statutory rights afforded to conservatees, for example, the right to the effective assistance of counsel. (See, e.g., *Conservatorship of David L.* (2008) 164 Cal.App.4th 701, 710 (*David L.*).)

In his supplemental brief, the public guardian argues that this appeal is moot because the conservatorship order has expired, and the issues raised are not capable of repetition but likely to evade review. In addition, his brief

___

appeal could likely have been decided before the expiration of the conservatorship order. "Our intent here is not to assign blame; we acknowledge that '[f]or a variety of legitimate reasons, counsel may not always be able to prepare briefs or other documents within the time specified in the rules of court' and that '[i]f good cause is shown, the court must extend the time.' (Cal. Rules of Court, rule 8.63(a)(3).) Nonetheless, when requesting an extension of time, counsel should be mindful of the expiration date of the conservatorship order and should inform the court of that date so that good cause may be evaluated properly." (*K.Y.*, *supra*, 100 Cal.App.5th at p. 990, fn. omitted.)

6

makes the following representations about developments with respect to J.R.'s conservatorship during the pendency of this appeal:

"[J.R.] was moved to a board and care home on or about March 19, 2024, in Yuba City. He transferred from California Psychiatric Transitions (locked MHRC) to Willow Glenn (board and care). This is a 'step down' and therefore shows progress in his treatment, however, the recommendation in May 2024 was for [J.R.] to stay on conservatorship for another year. On May 17, 2024, [J.R.] appeared via Zoom and requested a bench trial to contest the conservatorship. On May 24, 2024 the court set the trial for June 25, 2024 at 2pm and ordered his personal appearance. Judge Marilyn B. Miles ruled that [J.R.] was still gravely disabled beyond a reasonable doubt and ordered the powers requested be granted after finding they were necessary by clear and convincing evidence." These factual assertions were made without citation to the record.

J.R.'s appellate counsel advised that he was aware that J.R. was transferred to Willow Glen during the pendency of this appeal, but that as to the remaining assertions, he did not "have sufficient either direct or indirect knowledge to agree or to disagree with them."

We asked the public guardian to provide documents supporting his representations, and he filed a March 19, 2024 notice of change of address for J.R. to Willow Glen Care Center, transcripts of the hearings held on May 17, May 24, and June 21, and a minute order from the bench trial held before Judge Miles on June 25. These documents indicate that J.R.—again represented by Joseph Futrell—appeared and testified in person at the June 25 trial, along with Richard Brouette and Jennifer Beeson, and that "[u]pon conclusion of testimony and evidence the court found, beyond a reasonable doubt, the defendant to be gravely disabled due to mental illness and

7

grant[ed] the requested orders, with details as read into the record." On our own motion, we take judicial notice of these documents as "[r]ecords of . . . any court of this state." (Evid. Code, § 452, subd. (d); see § 459, subd. (a).) And now dismiss the appeal as moot.

"[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal would be without practical effect, and the appeal will therefore be dismissed." (9 Witkin, Cal. Procedure (6th ed. 2024) Appeal, § 777.) " ' "[T]he critical factor in considering whether [an] appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error." (*In re N.S.* (2016) 245 Cal.App.4th 53, 60.)' " (*Sturgell v. Department of Fish & Wildlife* (2019) 43 Cal.App.5th 35, 43–44, quoting *In re David B.* (2017) 12 Cal.App.5th 663, 644.)

"[W]e have inherent discretion to resolve an appeal on the merits where 'the issues in [the] case are of public interest, will continue to evade review, and are likely to recur, both in general and as to the petitioner specifically.' (*Baber v. Superior Court* (1980) 113 Cal.App.3d 955, 959; *Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 960 [exercising discretion to consider moot appeal where 'the issue presented . . . is capable of recurring, but evading review, and involves a matter of general public interest'].)" (*K.Y., supra*, 100 Cal.App.5th at p. 989.) We decline to exercise that discretion here.

The relief requested—a reversal of the May 17, 2023 conservatorship order and a remand for a new trial—would be "without practical effect," given that the order has expired by operation of law and been replaced by a new conservatorship order, entered after a new trial at which J.R. was personally present.

8

J.R.'s arguments that we should nevertheless decide his appeal on the merits are unavailing. The parties agree that J.R. had a statutory right to be physically present at his trial unless he was "unable to attend the hearing by reason of medical inability" (Prob. Code, § 1825, subd. (a)(2)), and that "a prospective conservatee who requests substitute appointed counsel must be given a full opportunity to state the reasons for his request in accordance with *Marsden*." (*David L.*, *supra*, 164 Cal.App.4th at pp. 712–713.) The further questions of whether the trial court properly found, based on the declarations of Drs. Stuart and Coats, that the prosecution had established such "medical inability," and whether J.R.'s colloquies with the trial court constituted a waiver of his right to be physically present or triggered the court's obligations under *Marsden* are highly factual ones specific to the circumstances of this case and unlikely to recur.

As for J.R.'s argument that we should decide his appeal on the merits because of the social stigma and legal consequences of the now-expired conservatorship order, the record shows that J.R. was first placed on conservatorship in 2014, a conservatorship that lasted until late 2020, and that, as noted, has since been renewed. Given this history, "there is little likelihood that [J.R.] will suffer collateral consequences as a result of the finding of grave disability on this specific petition." (*K.Y.*, *supra*, 100 Cal.App.5th at p. 989.) Finally, even if due process protects J.R.'s statutory right to appeal the conservatorship order, nothing about due process requires us to exercise our inherent discretion to decide an appeal that has become moot, and none of the authorities cited by J.R. suggest otherwise.

## DISPOSITION

The appeal is dismissed as moot.

9

_____

Richman, Acting P.J.

We concur:

_____

Miller, J.

_____

Desautels, J.

*Conservatorship of J.R.* (A168239)