[No. C017917. Third Dist. Nov. 22, 1994.]

CONSERVATORSHIP of the Person and Estate of JAMES M. JOHN CRANE, as Conservator, etc., Petitioner and Respondent, v. JAMES M., Objector and Appellant.

**[Opinion certified for partial publication.*]**

_____

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

**COUNSEL**

Paul Bernstein, under appointment by the Court of Appeal, for Objector and Appellant.

James A. Curtis, County Counsel, Harold E. DeGraw, Assistant County Counsel, Mark W. Rathe, Chief Deputy County Counsel, Melanie K. Wellner and Keith C. Johnson, Deputy County Counsel, for Petitioner and Respondent.

**OPINION**

**SIMS, J.**—Following trial to the court, the court reappointed John Crane, the Director of the Nevada County Department of Social Services, as conservator of the person and estate of James M. under the Lanterman-Petris-Short Act. (Welf. & Inst. Code, § 5350 et seq.; further statutory references are to the Welfare and Institutions Code unless otherwise indicated.) The court found the conservatee continues to be gravely disabled and the least restrictive placement continues to be Napa State Hospital. The court disabled the conservatee from possessing a driver's license, entering into contracts, consenting or refusing to consent to medical treatment whether or not related to his grave disability, and possessing a firearm. (§ 5357, subds. (a), (b), (d), (e) & (f).)

The conservatee appeals, contending the trial court lacked jurisdiction to reappoint the conservator because the prior conservatorship had expired and the court trial did not commence within 10 days following the conservatee's demand for trial. (§ 5350, subd. (d).) The conservatee also contends the trial court erred in concluding Napa State Hospital was the least restrictive appropriate placement, and in imposing the special disabilities.

In the published portion of this opinion, we shall conclude the 10-day time limit in section 5350 is directory, not mandatory, so that the trial court had jurisdiction to conduct the reappointment hearing. In an unpublished portion of the opinion, we reject the conservatee's remaining contentions of error. We shall therefore affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

The conservator was appointed in March 1992 and reappointed in February 1993 for a period ending January 18, 1994. In November 1993, the conservator filed a petition for reappointment. A hearing on the petition was set for January 10, 1994, and reset for January 18, 1994. On the latter date, the conservatee demanded a court trial pursuant to section 5350, subdivision (d).[1] By agreement of all parties, the trial was set for February 18, 1994.

The conservatee was not present in court on February 18, 1994, because he had not been transported from Napa State Hospital due to a snow storm. The conservator requested a continuance, and the conservatee requested the petition for reappointment be dismissed because the trial was not held within the time specified by section 5350, subdivision (d). After hearing evidence that the conservatee had to be transported in a "cage car," and that the county's "cage car" was not equipped with four-wheel-drive or adequate storm enhancements, the trial court ruled: "In light of all the circumstances and in light of all the evidence and given the fact that Mr. M. does have a history which is noted in the file and was testified to by the witnesses of being sufficiently hostile that it would be inappropriate to take him in the normal 4-wheel drive vehicle, I think that the request for a short continuance is appropriate." The trial was continued four days, to February 22, 1994.

At trial, George Heitzman, M.D., testified the conservatee resides at Napa State Hospital where he is on his 37th admission. He is gravely disabled due to chronic paranoid schizophrenia, a disease characterized by systematized delusions or continuous auditory hallucinations based on a single theme. As examples of paranoid delusions, Dr. Heitzman cited the conservatee's beliefs that he is at Napa because the staff there are covering up prior misdeeds of the Nevada City Police Department, and that the staff at Napa are taking his money and poisoning him.

The conservatee was placed in seclusion on approximately six occasions in the past year due to physical assaults on staff and peers. Dr. Heitzman testified the assaults were based on the conservatee's paranoid delusions.

---

[1] Section 5350, subdivision (d), provides: "The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue whether he or she is gravely disabled. Demand for court or jury trial shall be made within five days following the hearing on the conservatorship petition. If the proposed conservatee demands a court or jury trial before the date of the hearing as provided for in Section 5365, such demand shall constitute a waiver of the hearing. [¶] Court or jury trial shall commence within 10 days of the date of the demand, except that the court shall continue the trial date for a period not to exceed 15 days upon the request of counsel for the proposed conservatee. [¶] This right shall also apply in subsequent proceedings to reestablish conservatorship."

The conservatee was absent without leave from Napa on approximately a dozen occasions. During these absences, he repeatedly became intoxicated. At one point, he was given a trial placement at Well Spring, an unlocked and less supervised facility at Napa. The conservatee escaped and ended up at a local bar. Further facts will be developed in succeeding parts of this opinion.

DISCUSSION

I

■ The conservatee contends the trial court was without jurisdiction to reappoint the conservator because (1) the prior conservatorship terminated prior to the reappointment, and (2) the court trial did not commence within the period prescribed by section 5350, subdivision (d). Neither claim has merit.

By the terms of the February 1993 order reappointing the conservator, the prior conservatorship terminated January 18, 1994, more than 30 days prior to the court trial on February 22, 1994. However, the expiration of a prior conservatorship does not divest the court of power to reappoint the conservator. (*In re Gandolfo* (1984) 36 Cal.3d 889, 896 fn. 2; [206 Cal.Rptr. 149, 686 P.2d 669], *Conservatorship of McKeown* (1994) 25 Cal.App.4th 502, 505 [30 Cal.Rptr.2d 542]; cf. §§ 5361, 5363.) In his reply brief, the conservatee effectively concedes as much by stating: "the reappointment of conservator is essentially no different from the initial appointment of conservator: the procedure is the same and the petitioner must establish the case *de novo* for each reappointment." That is what happened here.

■ Nevertheless, the conservatee contends the trial court lacked power to reappoint the conservator because the court trial did not commence "within 10 days of the date of the demand," as required by section 5350, subdivision (d). (See fn. 1, *ante.*) The point has no merit.

The conservatee demanded a court trial on January 18, 1994. By agreement of all parties, the trial was scheduled for February 18, 1994, a date beyond the 10-day limit and the 15-day extension. The conservatee concedes the trial could have been held February 18, but claims it could not have been continued to February 22.[2] Whether the four-day continuance was proper depends on whether the time limit of section 5350, subdivision (d) is mandatory or directory.

"In determining the consequences of failure to comply with [statutory] time limits we are to follow the framework established by our Supreme

---

[2]February 22 was erroneously stated as "January."

Court in *Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1] and more recently in *People* v. *McGee* (1977) 19 Cal.3d 948, 958-963 [140 Cal.Rptr. 657, 568 P.2d 382]. In *McGee* our high court explained: 'Traditionally, the question of whether a public official's failure to comply with a statutory procedure should have the effect of invalidating a subsequent governmental action has been characterized as a question of whether the statute should be accorded "mandatory" or "directory" effect. If the failure is determined to have an invalidating effect, the statute is said to be mandatory; if the failure is determined not to invalidate subsequent action, the statute is said to be directory. . . . [I]n evaluating whether a provision is to be accorded mandatory or directory effect, courts look to the purpose of the procedural requirement to determine whether invalidation is necessary to promote the statutory design.' [Citation.]" (*People* v. *Curtis* (1986) 177 Cal.App.3d 982, 987-988 [223 Cal.Rptr. 397], parallel citations omitted.)

"With respect to time-limit statutes the general rule is that 'requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed.'" (*People* v. *Curtis, supra,* 177 Cal.App.3d at p. 988, quoting *Edwards* v. *Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365].) "In ascertaining probable intent, California courts have expressed a variety of tests. In some cases focus has been directed at the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. [Citations.] Other cases have suggested that a time limitation is deemed merely directory 'unless a consequence or penalty is provided for failure to do the act within the time commanded.' [Citations.]" (*Edwards, supra,* 25 Cal.3d at p. 410.)

Section 5350, subdivision (d) does not provide a consequence or penalty for failure to commence the trial within 10 days of the demand. (*Ibid.*; see *Garrison* v. *Rourke* (1948) 32 Cal.2d 430, 435-436 [196 P.2d 884], overruled on other grounds in *Keane* v. *Smith* (1971) 4 Cal.3d 932, 939 [95 Cal.Rptr. 197, 485 P.2d 261].) This omission suggests the statute is intended to be directory only.

Moreover, one consequence of holding section 5350, subdivision (d) mandatory would be to divest the trial court of jurisdiction *by mere implication* rather than by express statutory command. (*Garrison* v. *Rourke, supra,* 32 Cal.2d at p. 436.) "While the courts are subject to reasonable statutory regulation of procedure and other matters, they will maintain their constitutional powers in order effectively to function as a separate department of government. [Citations.] Consequently an intent to defeat the exercise of the

court's jurisdiction will not be supplied by implication." (*Ibid.*) For this reason, we cannot say the Legislature *impliedly intended* to divest the superior court of jurisdiction to rule on a conservatorship petition where, as here, the trial is delayed four days by an act of nature beyond the control of the court or other local officials.

We are mindful that a conservatee has a strong interest in a prompt determination of issues raised by a reappointment petition so that he or she may avoid the disabilities of conservatorship where they no longer are warranted by the evidence. (§ 5361; *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 223-225 [152 Cal.Rptr. 425, 590 P.2d 1] [conservatee may be confined following expiration of existing conservatorship pending completion of reappointment proceeding].) We believe this interest is sufficiently protected by the undisputed power of the superior court to dismiss the reappointment petition where the delay in the proceedings has proved prejudicial to the conservatee's interests. We do not believe the conservatee's interest is so overarching as to require the divestiture of superior court jurisdiction where, as here, the delay is attributable to the forces of nature and is in no way prejudicial. Accordingly, we conclude section 5350, subdivision (d) should be accorded directory rather than mandatory effect. Appellant's motion to dismiss the reappointment petition was properly denied.

II*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment (order reappointing conservator) is affirmed.

Puglia, P. J., and Sparks, J., concurred.

---

*See footnote *ante*, page 293.