[No. A070363. First Dist., Div. Two. Sept. 11, 1996.]

Conservatorship of the Person of KEVIN M.
ELIZABETH G., Petitioner and Appellant, v.
KEVIN M., Objector and Respondent.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of part III.C.

**COUNSEL**

Steven M. McCarthy for Petitioner and Appellant.

Paul Bernstein, under appointment by the Court of Appeal, for Objector and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

Appellant, the mother and former conservator of respondent, appeals from an order of the Alameda County Superior Court terminating respondent's Lanterman-Petris-Short Act (LPS Act or Act) conservatorship. We are called

upon to decide whether a potential conservatee must exercise his right to a jury trial within the time period set forth in Welfare and Institutions Code section 5350, subdivision (d),[1] or whether, pursuant to an unwritten procedure of the Alameda County Superior Court, the conservatee may automatically reserve his right to a jury trial and exercise that right once at any time during the year-long conservatorship. We conclude that this unwritten procedure is fatally inconsistent with the LPS Act.

## II. BACKGROUND

### A. *The Statute*

In order to address the substantive and procedural claims raised in this appeal, a brief overview of the LPS Act is required. The LPS Act "governs the involuntary treatment of the mentally ill in California. Enacted by the Legislature in 1967, the Act includes among its goals ending the inappropriate and indefinite commitment of the mentally ill, providing prompt evaluation and treatment of persons with serious mental disorders, guaranteeing and protecting public safety, safeguarding the rights of the involuntarily committed through judicial review, and providing individualized treatment, supervision and placement services for the gravely disabled by means of a conservatorship program. (§ 5001.) The act limits involuntary commitment to successive periods of increasingly longer duration, beginning with a 72-hour detention for evaluation and treatment (§ 5150), which may be extended by certification for 14 days of intensive treatment (§ 5250); that initial period may be extended for an additional 14 days if the person detained is suicidal. (§ 5260.) In those counties that have elected to do so, the 14-day certification may be extended for an additional 30-day period for further intensive treatment. (§ 5270.15.) Persons found to be imminently dangerous may be involuntarily committed for up to 180 days beyond the 14-day period. (§ 5300.) After the initial 72-hour detention, the 14-day and 30-day commitments each require a certification hearing before an appointed hearing officer to determine probable cause for confinement unless the detainee has filed a petition for the writ of habeas corpus. (§§ 5256, 5256.1, 5262, 5270.15, 5275, 5276.) A 180-day commitment requires a superior court order. (§ 5301.)

"The act authorizes the appointment of a conservator for up to one year for a person determined to be gravely disabled as a result of a mental

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise indicated. Hereafter, section 5350, subdivision (d), will be referred to simply as section 5350(d).

disorder and unable or unwilling to accept voluntary treatment.[*] (§ 5350.) The proposed conservatee is entitled to demand a jury trial on the issue of his or her grave disability, and has a right to counsel at trial, appointed if necessary. (§§ 5350, 5365.) ▮ The party seeking imposition of the conservatorship must prove the proposed conservatee's grave disability beyond a reasonable doubt and the verdict must be issued by a unanimous jury. (*Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1].)" (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1008-1009 [36 Cal.Rptr.2d 40, 884 P.2d 988], fn. in original.) The conservatorship may be reestablished annually following a hearing at which the conservatee is entitled to the same procedural safeguards. (§§ 5350(d), 5362.)

Section 5350(d) sets forth the right to jury trial for conservatorship hearings. As its language is crucial to the resolution of this appeal, it follows: "The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue whether he is gravely disabled. *Demand for court or jury trial shall be made within five days following the hearing on the conservatorship petition. If the proposed conservatee demands a court or jury trial before the date of the hearing as provided for in Section 5365, such demand shall constitute a waiver of the hearing.* [¶] Court or jury trial shall commence within 10 days of the date of the demand, except that the court shall continue the trial date for a period not to exceed 15 days upon the request of counsel for the proposed conservatee. [¶] The right shall also apply in subsequent proceedings to reestablish conservatorship." (Italics added.)

During the conservatorship, the conservatee may petition to modify the terms of or end the conservatorship. (§§ 5364, 5358, 5358.3.) Petitions for rehearing may be brought at any time, but no more frequently than every six months. (§ 5364.) ▮ At such a hearing, the conservatee bears the burden of producing evidence and proving by a preponderance of the evidence that he is no longer gravely disabled. (*Conservatorship of Scharles* (1991) 233 Cal.App.3d 1334, 1343, fn. 8 [285 Cal.Rptr. 325].) The conservatee does not have a right to a jury trial for such hearing. (*Baber* v. *Superior Court* (1980) 113 Cal.App.3d 955, 965-966 [170 Cal.Rptr. 353].)

B. *The Unwritten Procedure*[2]

In Alameda County, as in most counties, the conservatee is represented by the public defender and the public guardian is represented by the county

---

"[*]'Gravely disabled,' as relevant to this case is defined as 'unable to provide for . . . basic personal needs for food, clothing, or shelter.' (§ 5008, subd. (h)(1)(A).)

[2]In order to piece together what happened in this case and the contours of the challenged Alameda County Superior Court procedure, we take judicial notice, as requested by respondent, of certain declarations and exhibits filed in a prior writ proceeding (*Elizabeth G.* v. *Kevin M.* (Apr. 27, 1995) A069126 [nonpub. opn.]), which is further described below. We

counsel. Private counsel may enter the picture when, as in this case, a private conservator is appointed.

The LPS Act cases are heard in one department. For over seven years, the "agreed procedure" followed in that department in Alameda County is that the right to jury trial to contest the initial establishment of a section 5350 conservatorship is automatically reserved and may be requested at any time during the conservatorship. The unwritten procedure functions as a sort of "standing stipulation" that is operative unless something to the contrary is placed on the record.

## C. *Respondent's Conservatorship*

LPS Act proceedings for conservatee began in January 1994. On February 15, 1994, a temporary conservatorship lasting 150 days was established and the Alameda County Public Conservator was appointed to act as conservator. The conservatee is a chronic schizophrenic, who at the time the conservatorship was established was found by the court to be a gravely disabled person within the meaning of section 5008, subdivision (h).

On July 12, 1994, the trial court granted the public conservator's petition and issued its order establishing a year-long LPS Act conservatorship and appointed appellant to act as conservator.[3] (§ 5350.) At the hearing held the same day, respondent was not present and his public defender waived personal appearance. Appellant was represented by county counsel. The matter was submitted to the court on a doctor's declaration and the report of the public conservator.

No explicit demand for a jury trial within five days of the hearing and order is found in the record. (See § 5350(d).)

On December 13, 1994, respondent petitioned for reconsideration of the conservatorship. (See § 5364.) Appellant continued to be represented by county counsel. The court heard witnesses on February 14, 1995, and denied the petition.

---

also grant respondent's request that we take judicial notice of certified copies of certain Alameda County Superior Court records from this case that were not included in the record on appeal. (Evid. Code, §§ 452, subd. (d), 453, 459, subd. (a).)

[3]Appellant signed a conservatorship agreement on June 2, 1994. The agreement states: "A copy of the Private Conservator's Handbook was given to the proposed conservator and the LPS Conservatorship Program was explained to the proposed conservator . . . ." The agreement further recites: "The undersigned agrees that he/she has been informed as to the nature of the duties he/she might have as conservator. These duties include but are not limited to: . . . (6) Preparing a defense of conservatorship and arranging for medical testimony in the event the conservatee requests a jury trial. (Again, you may want to consult an attorney of your choice.)"

Immediately after the court's ruling, respondent requested a jury trial, which the court then scheduled.

Subsequently, appellant retained private counsel. Appellant challenged respondent's right to a jury trial. The trial court determined that appellant's jurisdictional objections were not valid and, in light of the court's established procedure, respondent was entitled to proceed with his jury trial.

Appellant then sought a writ of prohibition from this court (*Elizabeth G.* v. *Kevin M., supra,* A069216). We issued an order to show cause. After full briefing and oral argument, however, we discharged the order as improvidently granted and summarily denied the writ. (Order filed Apr. 27, 1995 [nonpub. opn.].)

When the case returned to superior court, the conservatorship was six weeks away from its expiration date of July 12, 1995. Appellant had not instigated and did not subsequently instigate proceedings to extend the conservatorship for another year. (§§ 5361, 5362.)

On May 4, 1995, the parties stipulated that respondent's jury trial had commenced. (No jury was actually impaneled.) The appellant's entire case consisted of a short opening statement asserting that the superior court lacked jurisdiction to proceed with the jury trial. Respondent then made a motion for nonsuit, which was granted. The conservatorship was terminated on May 22, 1995, and this appeal followed.[4]

Since the conservatorship was terminated, the appellant has not sought to bring respondent back under conservatorship. In October 1995, the public guardian instituted new conservatorship proceedings, but the trial court concluded that respondent was not gravely disabled within the meaning of the LPS Act. Respondent's brief, filed in January 1996, states that he is not currently under conservatorship and we have received no contrary information since that time from either party.

### III. Discussion

A. *Mootness*

■ It is obvious from the above recitation of facts that the case before us is moot—respondent is no longer under conservatorship. "Because a conservatorship is relatively brief (one year) in comparison with the appellate

---

[4]After appellant filed her brief on appeal, but prior to the time respondent filed his, respondent filed a motion to dismiss the appeal. One of the grounds for dismissal urged was mootness. We summarily denied the motion. (Order filed Nov. 21, 1995.)

process, we find it likely that this issue —[whether the Alameda County Superior Court procedure of automatically reserving jury trials is fatally inconsistent with the LPS Act]—is one capable of recurring, yet of evading review because of mootness. We therefore conclude it is appropriate to address the issue in this case. [Citation.]" (*Conservatorship of Susan T.*, *supra*, 8 Cal.4th at p. 1011, fn. 5; see also *Conservatorship of Bones* (1987) 189 Cal.App.3d 1010, 1014-1015 [234 Cal.Rptr. 724]; *Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 548 [200 Cal.Rptr. 262].)[5]

B. *Merits*

■ Appellant contends that the statutory five-day demand requirement of section 5350(d) is mandatory and jurisdictional. We agree that the requirement is mandatory, but we do not agree that it is jurisdictional.

We note initially that there is disparate authority regarding exactly what it means to conclude that a statute is "mandatory," as opposed to "directory." The term is often used synonymously with jurisdictional.[6] ■ However, as noted by Witkin, there may be a distinction: "A typical misuse of the term 'jurisdictional' is to treat it as synonymous with 'mandatory.' There are many time provisions, e.g., in procedural rules, which are not directory but mandatory; these are binding, and parties must comply with them to avoid default or other penalty. But failure to comply does not render the proceeding void, and usually the court has power to relieve a delinquent party from his default. [Citations.]" (2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 3, p. 368.)

■ We are persuaded that section 5350(d) is a "mandatory" statute of the type described by Witkin.[7] The statute uses the term "shall," which renders it "presumptively mandatory." (3 Sutherland, Statutory Construction,

---

[5]While respondent urged mootness and other procedural barriers to reaching the merits in his brief, at oral argument his counsel urged the court to resolve the case on the merits.

[6]The term is also used to convey the "obligatory," in contrast to the "permissive," nature of a statute. (See *People* v. *Harner* (1989) 213 Cal.App.3d 1400, 1405-1406 [262 Cal.Rptr. 422].) The requirement at issue here is by its own terms at a minimum obligatory in nature. Section 12 specifically provides that " 'shall' is mandatory and 'may' is permissive." (Prob. Code, §§ 12, 20.)

[7]An authoritative treatise has recognized: "[T]he differences between mandatory and directory, or between prohibitory[/obligatory] and permissive, represent a continuum instead of separate, mutually exclusive characteristics." (1A Sutherland, Statutory Construction (5th ed. 1991) § 25.04, p. 454.) We believe this observation explains much of the confusion in assigning precise labels to serve as shorthand references for the Legislature's intent for the effect of noncompliance with a statutory directive. There is a point on any continuum where choice of category may become debatable. Such debate should not obscure the purpose of the analysis, which in this case is to ascertain and give effect to the penalty, if any, the Legislature intended to attach to noncompliance with its statutory directive. We are persuaded

*supra*, § 57.02, p. 4.) Furthermore, our conclusion is consistent with the rule that "[w]hen a statute directs things to be done by a private person within a specified time, and makes his rights dependent on proper performance, unless the failure to perform in time may injure the public or individuals, the statute is mandatory. Where an individual is the person not strictly complying, he has no grounds for complaint." (*Id.* at § 57.19, p. 49, fns. omitted.)

As Witkin explains, although the deadline set forth in the rule is a mandatory one, it does not automatically follow that the trial court loses jurisdiction if the deadline is violated. We believe a constructive analogy can be drawn between the present statute and Code of Civil Procedure section 631. The latter statute governs the procedures for requesting a jury trial in civil cases. "[C]ivil procedural law [particularly section 631] determines whether an individual has waived the right to a jury trial in a conservatorship proceeding."[8] (*Conservatorship of Maldonado* (1985) 173 Cal.App.3d 144, 148 [218 Cal.Rptr. 796].) One of the procedures for requesting a jury trial pursuant to section 631 is to demand the jury within five days of notice of setting of the case for trial. (Code Civ. Proc., § 631, subd. (a)(4).) If a timely demand is not made under section 631, the party loses the right to a jury trial; the trial court is not divested of jurisdiction. In fact, subdivision (d) of section 631 specifically provides that "[t]he court may, in its discretion upon just terms, allow a trial by jury although there may have been a waiver of a trial by jury."[9] We are persuaded that the Legislature intended the same type of penalty for violation of the deadline set forth in section 5350(d): The

---

that little would be accomplished by a lengthy analysis here of the various labels that may be employed to describe the legislative intent that we must ascertain. Instead, as explained in more detail in the body, we are convinced that Witkin's explanation of mandatory, but not jurisdictional, best summarizes the legislative intent for the statutory requirement in question.

[8]"Section 5350 provides in pertinent part: 'The procedure for establishing, administering and terminating conservatorship under this chapter shall be the same as that provided in Division 4 (commencing with Section 1400) of the Probate Code, . . .' Probate Code section 1827 states that '[t]he court shall hear and determine the matter of the establishment of the conservatorship according to the law and procedure relating to the trial of civil actions, including trial by jury if demanded.' " (*Conservatorship of Maldonado, supra,* 173 Cal.App.3d at p. 148.)

[9]We do not address respondent's contention that, assuming the reservation pursuant to the trial court's unwritten policy was not effective as a demand for a jury trial, the trial court could have exercised its discretion pursuant to Code of Civil Procedure section 631, subdivision (d), to grant his belated request for a jury trial. Respondent did not preserve this issue for appeal; no request was made to the trial court to exercise its discretion.

We do observe that respondent's conservatorship was well established by the time that respondent demanded his jury trial. Generally, relief pursuant to Code of Civil Procedure section 631, subdivision (d), would not be available after trial of the parties' dispute occurred. Respondent's argument therefore raises substantial questions regarding whether the relief provided for in section 631, subdivision (d), can be integrated with the statutory scheme for LPS Act conservatorships and, if so, whether the trial court would abuse its discretion by exercising it after a certain point in the proceedings.

conservatee loses the right to jury (or court) trial if the demand is not timely made, but the trial court is not divested of jurisdiction. (Cf. *Conservatorship of James M.* (1994) 30 Cal.App.4th 293 [35 Cal.Rptr.2d 567] [10-day deadline for holding § 5350 hearing and 15-day extension limit are "directory;" trial court retains jurisdiction to hold hearing when the cumulative deadline exceeded].)

The nature of the statute established, we turn next to the question of whether the procedure employed by the Alameda County Superior Court can coexist with it. We are persuaded the answer is no. There is no question that the LPS Act does not expressly sanction the procedure employed by the Alameda County Superior Court. What may not be so readily apparent is that the procedure employed is in fact inconsistent with the Act.

"The LPS Act represents a delicate balance 'between the medical objectives of treating sick people without legal delays and the equally valid legal aim of insuring that persons are not deprived of their liberties without due process of law.' (*Thorn* [v. *Superior Court* (1970)] 1 Cal.3d [666], 673-674 [83 Cal.Rptr. 600, 464 P.2d 56].)" (*Baber* v. *Superior Court, supra,* 113 Cal.App.3d at p. 965; see also Tieger & Kresser, *Civil Commitment in California: A Defense Perspective on the Operation of the Lanterman-Petris-Short Act* (1977) 28 Hastings L. J. 1407, 1420 (hereafter *Civil Commitment*) ["balance between various libertarian, therapeutic and public welfare concerns"].) Integral to this delicate balance is the presence or absence of procedural safeguards at specific stages of LPS Act proceedings.

The prohibition of indefinite periods of confinement of the gravely disabled was one of the most important reforms of the LPS Act. (Civil Commitment, *op cit. supra,* 28 Hastings L. J. at p. 1431.) The Legislature granted the conservatee the right to a jury trial at the establishment and annual renewal of the conservatorship as part of this important reform. Our Supreme Court, recognizing that the *establishment* of a LPS Act conservatorship deprives the conservatee of significant liberty and may result in a lasting stigma, concluded that constitutional due process considerations mandated the extension of the protections of a unanimous jury verdict and a standard of proof beyond a reasonable doubt to any trial for establishment or reestablishment of a conservatorship. (*Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1].) Subsequently, our appellate courts have held that due process does not require that these protections adhere to challenges to the continuation of the conservatorship, commonly referred to as petitions or motions for rehearing. The statute does not grant the conservatee a right to a jury trial at a rehearing (*Baber* v. *Superior Court, supra,* 113 Cal.App.3d at pp. 965-966) and, at such a hearing, the conservatee bears the burden of proving by a preponderance of the evidence that he

or she is no longer gravely disabled. (*Conservatorship of Scharles, supra,* 233 Cal.App.3d at p. 1343, fn. 8.)

Viewing the procedures set forth in the LPS Act as fundamental to the Legislature's attempt to accommodate the often conflicting goals underlying the Act, we cannot sanction the continuation of the unwritten procedure of the Alameda County Superior Court. First, the procedure routinely ignores a mandatory time limit established by the Legislature for the conservatee to claim his or her jury trial.[10] ██ As an authoritative treatise explains: "No statutory provisions are intended by the legislature to be disregarded . . . ." (3 Sutherland, Statutory Construction, *op cit. supra,* § 57.01, p. 2.) No matter how practical or convenient, a court may not sanction the routine disregard of a mandatory or obligatory legislative requirement.

██ Second, for all practical purposes the procedure results in a transfer of the jury trial right and associated procedural safeguards adhering to that right from the hearing establishing the conservatorship (§ 5350(d)) to a rehearing on the continued existence of the conservatee's grave disability and thus the conservatorship (§ 5364). It is clear that the issue to be determined at a section 5350(d) establishment hearing is the existence of a grave disability *at that time.* A "reserved" jury trial held pursuant to the Alameda County Superior Court procedure does not adjudicate that same question. Rather, what is necessarily at issue is the existence of a grave disability *at the time of the "reserved" jury trial.* That question is the same one raised by a petition for rehearing pursuant to section 5364 and respondent concedes that the right to a jury trial does not attach to such a hearing. This transfer of rights deriving from the Alameda County Superior Court's procedure is inconsistent with both the statutory scheme and the Supreme Court's reasoning for grafting heightened protections on to a jury trial available for *establishment of the conservatorship,* which was "based on the concept such protections are basic to a fair determination of the possible loss of freedom of a person involuntarily brought into the system." (*Conservatorship of Warrack* (1992) 11 Cal.App.4th 641, 647 [14 Cal.Rptr.2d 99].) At the time a conservatee demands a jury trial under the Alameda County procedure, however, he or she has already been found gravely disabled, entered the system, lost his or her freedom, and incurred the stigma of involuntary commitment. He or she has thus already suffered the effects that

---

[10] We are not persuaded by respondent's argument that the "reservation" of the procedure is equivalent to a demand for a jury trial. The reservation simply preserves the conservatee's ability to demand a jury trial at a later time. Pursuant to the reservation, the conservatee nevertheless may choose to forego a jury trial.

the jury trial and its attendant procedural safeguards are intended to protect against.[11]

 Having concluded that the unwritten procedure of the Alameda County Superior Court is fatally inconsistent with the LPS Act, but does not deprive the court of its jurisdiction, a question remains: Did the trial court err in holding the jury trial requested by respondent pursuant to the procedure? We conclude not.

Respondent advances several arguments to support the trial court's decision to proceed with the jury trial. Since we find one argument dispositive, we limit our discussion to it. We are persuaded, as respondent contends, that the trial court correctly determined that the doctrines of estoppel and waiver barred appellant from challenging the trial court's jurisdiction to proceed with the jury trial in this case.

At the time the conservatorship was established, appellant was represented by county counsel and respondent was represented by the public defender.[12] County counsel, the public defender, and the court were all familiar with the unwritten procedure automatically reserving section 5350(d) jury trials. The public defender relies upon this procedure and regularly informs his clients of it. County counsel thoroughly understood that, if the conservatee did not immediately demand a jury trial, the right to a jury trial was automatically reserved and could be demanded once at any point during the conservatorship.[13] County counsel voiced no objection to following the trial court's standard procedure in this case.

Based upon this history, respondent contends that appellant was estopped from raising the court's lack of jurisdiction to proceed with the jury trial.

---

[11]Both parties buttress their positions regarding the validity of the unwritten procedure in question with policy arguments. These arguments are appropriately addressed to the Legislature. Our task concludes when we determine that the unwritten procedure is inconsistent with the statute enacted by that body.

[12]County counsel represented appellant until at least February 14, 1995.

[13]County counsel explained the following during a superior court hearing held on March 8, 1995:

"Ever since I've been dealing with this calendar, which has been about seven years now, that's been the—it's been the case that our practice has been that there is no specific statement made by the public defender that rights are reserved. It's just it's presumed that the—that the right to a jury trial is preserved unless otherwise stated.

"There—there have been some occasions where the—the—the client, the public defender's client, needs to hear that in court, and the public defender then has—has made such a statement that, you know, all rights are reserved. . . .

"But generally it has gone without saying that—that the—the conservatee has the right to a jury trial even though that may not be specifically reserved at the time the—the initial appointment is made, or at the time that the reappointment is made. It's just understood."

The argument has merit. We demonstrated above that failure to comply with deadline for requesting a jury trial set forth in section 5350(d) does not deprive the court of the power to hold conservatorship proceedings; i.e., the court does not lose either personal jurisdiction or subject matter jurisdiction. Thus, the type of jurisdictional error implicated by appellant's argument, if any, is an action of the court in excess of jurisdiction, i.e., reserving respondent's right to demand a jury trial and then providing the jury trial. A party's consent to a court's action in excess of jurisdiction, however, may estop the party from subsequently contesting that act. (E.g., *Law Offices of Stanley J. Bell* v. *Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011, 1021-1024 [43 Cal.Rptr.2d 717]; *People* v. *Collins* (1996) 45 Cal.App.4th 849, 864 [53 Cal.Rptr.2d 367].)

■ "Ordinarily, the existence of waiver and estoppel are questions of fact and, as a consequence, the trial court's determination is binding on the appellate court if it is supported by substantial evidence." (*People* v. *Collins*, *supra*, 45 Cal.App.4th at p. 865.) ■ The trial court rejected appellant's claim that it lacked jurisdiction to hold the requested jury trial. In so doing the first time, the trial court stated: ". . . I think in light of the practice that we followed here, I—I can't grant your motion because that would really be undermining the—the agreement that's been in effect here. And that was an agreement which I'm sure the public defender would rely upon. [¶] . . . And, in effect, I think we've had a practice here which constitutes a waiver of an objection based on failure to make a prompt demand for a jury trial. So on that basis your motion for nonsuit is denied." Although the oral ruling is not the model of clarity, we conclude the trial court ruled that appellant by her conduct had waived her objection and was estopped from challenging the holding of a jury trial consistently with the terms of the unwritten procedure.

The trial court's conclusion is supported by the record and by public policy favoring the preservation of jury trial rights. (Cf. *Cowlin* v. *Pringle* (1941) 46 Cal.App.2d 472, 476 [116 P.2d 109] ["[w]henever a doubt exists as to the propriety of granting relief from such waiver of jury trial such doubt, by reason of the constitutional guarantee, should be resolved in favor of according a litigant a trial by jury"].) Respondent was statutorily entitled, if he so desired, to a jury trial on the issue of his grave disability. (§ 5350(d).) Appellant acquiesced in the reservation of this right and to its exercise at a later time at the election of respondent. Appellant thus enjoyed the advantage of establishment of the conservatorship with the cooperation of respondent and without the expense of a jury trial. Simple fairness dictates that appellant be estopped from subsequently contending that the trial court lacked jurisdiction to provide the statutory right that she

agreed the respondent could elect to demand at any point during the conservatorship.[14]

Therefore, even though we have concluded that the deadline for exercising the right to a jury trial set forth in section 5350(d) is mandatory and the Alameda County Superior Court procedure purporting to reserve that right is fatally inconsistent with the LPS Act, the trial court correctly ruled that respondent should receive his jury trial. Accordingly, we affirm the judgment resulting from that trial.

## C. *Attorneys' Fees**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The judgment terminating the conservatorship is affirmed. Each party shall bear his or her own costs on appeal.

Kline, P. J., and Lambden, J., concurred.

A petition for a rehearing was denied October 10, 1996.

---

[14]Indeed, inasmuch as the public defender and county counsel represent the vast majority of the parties to conservatorship proceedings in Alameda County, it is entirely possible that waiver and estoppel on the part of the conservator also could be found in many of the proceedings still pending in which the conservatees relied upon the unwritten procedure of the Alameda County Superior Court to "reserve" jury trial rights.

*See footnote, *ante,* page 79.