Filed 6/18/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| Conservatorship of the Person and Estate of JOSE B. | B292172 |
| | (Los Angeles County Super. Ct. No. ZE032369) |
| PUBLIC GUARDIAN OF THE COUNTY OF LOS ANGELES, as Conservator, etc., | |
| Petitioner and Respondent, | |
| v. | |
| JOSE B., | |
| Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert S. Harrison, Judge. Affirmed.

Christopher Lionel Haberman, under appointment by the Court of Appeal, for Objector and Appellant.

Mary C. Wickham, County Counsel, Joyce M. Aiello, Assistant County Counsel, and William C. Sias, Deputy County Counsel, for Petitioner and Respondent.

Jose B. is a conservatee subject to a conservatorship under the Lanterman-Petris-Short (LPS) Act (Welf. & Inst. Code,[1] § 5000 et seq.). In 2008 the trial court appointed the Los Angeles County Office of the Public Guardian (Public Guardian) as Jose's conservator, finding Jose was gravely disabled as a result of a mental disorder. For the following 10 years Jose did not object to the annual reappointment of Public Guardian as his conservator. On February 28, 2018 Public Guardian filed a petition for reappointment as Jose's conservator on the ground Jose continued to be gravely disabled. This time, at a March 15, 2018 hearing, Jose contested the petition and demanded a jury trial. Although section 5350, subdivision (d)(2), provides a "[c]ourt or jury trial shall commence within 10 days of the date of the demand," unless the attorney for the proposed conservatee requests up to a 15-day continuance, the trial court set the matter for jury trial readiness almost two months later, on May 24, 2018. After two additional continuances, the trial commenced on July 30, 2018, 137 days after Jose's jury trial demand.

On appeal, Jose contends the trial court violated section 5350, subdivision (d)(2), and denied him due process by failing to commence the jury trial within 10 days of his demand for trial. We are deeply troubled by the significant delay of over four months in holding a trial on Jose's petition, especially given the lack of any justification by the court for most of the delay. Jose contends trials on conservatorship petitions are routinely continued by the trial courts in violation of the 10-day requirement. Although the record does not reflect whether this is

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

true, we emphasize the statutory obligation of trial courts to hold a jury trial within 10 days, with only a limited exception for a 15-day continuance if requested by the proposed conservatee.

However, the trial court's failure to commence trial within 10 days of Jose's jury trial demand does not support dismissal of the petition. The time limit in section 5350, subdivision (d)(2), is directory, not mandatory, because the Legislature has not expressly provided for dismissal of the conservatorship petition if a trial is not held within 10 days. Further, given the lack of prejudice to Jose, who does not challenge the jury's finding he was gravely disabled or claim he did not receive a fair trial, he was not denied due process. This does not mean trial courts should blithely continue conservatorship trials for their judicial convenience. The trial court should state on the record its justification for continuing a trial beyond the statutory deadline. If a proposed conservatee contends he or she has been prejudiced by the delay, the proper remedy is to file a motion to dismiss for lack of a speedy trial. Jose did not do that here. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Jose's Conservatorship*

On March 6, 2008 Public Guardian filed a petition for appointment as Jose's conservator pursuant to section 5008, subdivision (h)(1)(A) and (B). The petition alleged a medical doctor had determined Jose was gravely ill. The declaration in support of the LPS conservatorship stated Jose had schizophrenic disorder and was unwilling and unable to accept voluntary treatment. On April 4, 2008 the trial court granted the petition, finding Jose was "gravely disabled as a result of a mental disorder." On April 18 the trial court entered an order and

3

letters of conservatorship, appointing Public Guardian as the conservator of the person and estate of Jose. For the next 10 years Jose did not object to the annual renewal of the LPS conservatorship.

B.    *The Petition for Reappointment and Pretrial Proceedings*

On February 28, 2018 Public Guardian filed a petition for reappointment as Jose's conservator. The petition alleged Jose continued to be gravely disabled as a result of his mental disorder. The petition stated the conservatorship would automatically terminate on April 3, 2018 unless the trial court reappointed the conservator.

At the March 15, 2018 hearing, Jose contested the petition and demanded a jury trial. The attorney representing Jose indicated Jose's assigned attorney was not available the first two weeks of April. The trial court responded, "Right. I understand. So the jury trial demand is entered; that will be—this is on a reappointment. . . . [S]o set it for May 24, 2018 for a jury trial . . . ." Jose's attorney then asserted, "We're objecting to the length of time." The court responded, "All objections are reserved." Another attorney representing Jose asked, "So we are just putting it over for that?" The court replied, "Right. . . . Transportation and charts that day. All right. So we're going to have you come back in May and we'll set the jury trial." Jose answered, "All right." Jose's attorney inquired, "That's for jury trial?" The court replied, "That's for jury trial readiness."

At the May 24, 2018 jury trial readiness hearing, Jose's attorney stated, "So, Your Honor, we are ready; however, I'm not available next week, and I won't be available really until after the 15th." The trial court responded, "Of June. Okay. So we'll set it for a jury trial readiness . . . continue the jury trial for

4

July 23rd, 2018 at 1:30 p.m.  Jury trial . . . readiness July 19th.  We need transportation and charts that day.  All right.  All objections are noted."

At the July 19, 2018 hearing, the trial court set the jury trial for Monday, July 30.  The trial court then inquired of Jose's attorney, "[Y]ou want to set it for the following week for the Monday or the Thursday?"  Jose's attorney responded, "Whenever the court decides it's the earliest possible date."  The court replied, "Monday is obviously earlier.  Okay.  Just that means you will be in solid trial back to back.  They are also both of yours . . . ."  Jose's attorney asked, "Do I have a choice?"  The court responded, "No, unfortunately.  So neither does the court.  So July 30th, 2018 will be the trial at 1:30. . . .  All right.  We'll have you start trial a week from this Monday."

C.    *The Jury Trial and Reappointment of the Conservator*

The jury trial commenced on July 30, 2018.  Daniel McKinney, Ph.D., a clinical psychologist, testified as an expert witness for Public Guardian.  Dr. McKinney was the director of the psychology program at Jose's facility and a member of Jose's treatment team.  Dr. McKinney testified Jose suffered from schizophrenia and had delusions and auditory hallucinations.  Jose told Dr. McKinney he owned an apartment in Downey, two national restaurant chains, a nationwide bank, and a nationwide credit card company.  Further, Jose lacked insight into his mental condition because of his delusions.  Jose averaged one shower a week and needed prompting to eat meals and to attend group sessions.  When Jose went to group sessions, he did not actively participate because he did not see the need for them.  Jose was taking psychotropic medication, but he informed Dr. McKinney he would not take his medication once he left the

5

facility. Dr. McKinney opined Jose was gravely disabled and could not treat his mental illness on his own without assistance. Further, Jose could not provide for his own basic needs for food, clothing, and shelter if he left the facility.

Jose testified on his own behalf. Jose stated if he was not in a conservatorship, he would live with his friends or family. He added, "I just want to be left alone in this place because I've been locked up all my life." Jose testified he previously had schizophrenia, but he was no longer suffering from it. He stated, "I get smarter every time I read something, it goes through my mind and I react on it, that's why." Jose said the medication he was taking consisted of salt tablets that made him throw up and say things that were not right. Upon his release he would receive supplemental security income and general relief, as well as a retirement check from the police department once he called them.

On August 1, 2018 the jury found Jose was "presently gravely disabled due to a mental disorder." The trial court granted the petition and reappointed Public Guardian as Jose's conservator.

## DISCUSSION

A. *The LPS Act*

"The LPS Act governs the involuntary detention, evaluation, and treatment of persons who, as a result of mental disorder, are dangerous or gravely disabled. (§ 5150 et seq.) The Act authorizes the superior court to appoint a conservator of the person for one who is determined to be gravely disabled (§ 5350 et seq.), so that he or she may receive individualized treatment, supervision, and placement (§ 5350.1)." (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142 (*John L.*); accord,

*Conservatorship of K.P.* (2019) 39 Cal.App.5th 254, 257.) "As defined by the Act, a person is 'gravely disabled' if, as a result of a mental disorder, the person 'is unable to provide for his or her basic personal needs for food, clothing, or shelter.' (§ 5008, subd. (h)(1)(A).)" (*John L.*, at p. 142; accord, *Conservatorship of E.B.* (2020) 45 Cal.App.5th 986, 991.) "The party seeking imposition of the conservatorship must prove the proposed conservatee's grave disability beyond a reasonable doubt, and a jury verdict finding such disability must be unanimous." (*John L.*, at p. 143; accord, *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235.) After one year, an LPS conservatorship automatically terminates, and the conservator may seek reappointment by filing a petition. (§ 5361.)

A conservatee has a right to a jury trial upon demand at the establishment and annual renewal of a conservatorship. (*Conservatorship of M.M.* (2019) 39 Cal.App.5th 496, 499-500 (*M.M.*); *Conservatorship of Kevin M.* (1996) 49 Cal.App.4th 79, 84, 89 (*Kevin M.*); see § 5350, subd. (d).) Section 5350, subdivision (d), provides, "(1) The person for whom conservatorship is sought shall have the right to demand a court or jury trial on the issue of whether he or she is gravely disabled. Demand for court or jury trial shall be made within five days following the hearing on the conservatorship petition. If the proposed conservatee demands a court or jury trial before the date of the hearing as provided for in Section 5365, the demand shall constitute a waiver of the hearing. [¶] (2) Court or jury trial shall commence within 10 days of the date of the demand, except that the court shall continue the trial date for a period not to exceed 15 days upon the request of counsel for the proposed conservatee. [¶] (3) This right shall also apply in subsequent proceedings to reestablish conservatorship."

7

B.	*Jose Did Not Forfeit His Claim of Error*

Relying on *M.M.*, Public Guardian contends Jose forfeited any claim of error because he did not object to the delay of the jury trial and the case was continued to accommodate his attorney's schedule.  (*M.M., supra,* 39 Cal.App.5th at p. 501 [conservatee forfeited objection to the delay of trial date because he "never once complained to the trial court that his speedy trial rights were violated" and "[t]he initial trial setting and later continuances were largely at the request of *his* counsel due to [his] counsel's unavailability, and the need for an expert report"]; see *Conservatorship of Joseph W.* (2011) 199 Cal.App.4th 953, 967 [conservatee forfeited right to jury trial where he failed to object to court trial and participated in trial].)

Unlike the conservatee in *M.M.*, Jose objected to the delay of the jury trial.  Jose demanded a jury trial at the March 15, 2018 hearing.  After Jose's attorney indicated the assigned attorney was not available the first two weeks of April, the trial court stated it would set the jury trial for May 24, 2018, which the court later clarified was for a trial readiness hearing.  Jose's attorney responded, "We're objecting to the length of time."  The court did not explain why it did not set the jury trial within 10 days of Jose's demand—by March 26, 2018.[2]  Nor did the court

---

[2]	Because the 10th day fell on a Sunday, the deadline for commencement of trial was extended to Monday, March 26.  (Code Civ. Proc., §§ 12a, subds. (a) ["If the last day for the performance of any act provided or required by law to be performed within a specified period of time is a holiday, then that period is hereby extended to and including the next day that is not a holiday."], (b) [subd. (a) applies to a period of time expressed in any code or statute], 10 [defining "holiday" to

8

explain why it did not set the trial for April 16, the Monday after the two-week period during which Jose's attorney was unavailable. Instead, the court set the trial readiness hearing for May 24—70 days after Jose's jury trial demand. Jose's objection "to the length of time" before the trial date preserved the issue for appeal.[3]

C.    *The Delay in Commencement of Jose's Jury Trial Does Not Require Dismissal of the Petition*

Jose contends the trial court was required to dismiss the petition to reappoint the conservator because the requirement a jury trial commence within 10 days of a demand is mandatory under section 5350, subdivision (d)(2). Not so.

"Whether a requirement is mandatory or directory is determined largely by its effect: 'If the failure to comply with a particular procedural step does not invalidate the action ultimately taken, . . . the procedural requirement is referred to as "directory." If, on the other hand, it is concluded that noncompliance does invalidate subsequent action, the

---

include Sundays]; *Cody v. Justice Court of Vacaville Judicial Dist.* (1965) 238 Cal.App.2d 275, 286 [applying Code Civ. Proc., § 12a to criminal trial deadline].)

[3]    Public Guardian argues Jose acquiesced to the setting of the jury trial on May 24 by stating "all right" in response to the trial court's explanation that Jose would be back in May for a hearing to set a jury trial. We disagree. At the end of the March 15, 2018 hearing, the trial court informed Jose, "So we're going to have you come back in May and we'll set the jury trial." Jose replied, "All right." Jose's statement indicates he understood and agreed to come back to court for the May hearing, not that he consented to the delay.

9

requirement is deemed "mandatory."'" (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 340; accord, *People v. Gray* (2014) 58 Cal.4th 901, 909.) "'[U]nless the Legislature clearly expresses a contrary intent, time limits are typically deemed directory.'" (*Kabran*, at p. 343; accord, *Briggs v. Brown* (2017) 3 Cal.5th 808, 849 (*Briggs*).) "Some courts have held that the presumption may only be overcome where "'a consequence or penalty is provided for failure to do the act within the time commanded.'" [Citations.] Other courts have looked to whether the consequences of holding a time limitation mandatory or jurisdictional 'would defeat or promote the purpose of the enactment.'" (*Kabran*, at p. 343; accord, *In re D.P.* (2018) 21 Cal.App.5th 154, 162, 165-166 [five-day time limit of § 653.5, subd. (d), by which prosecutor must file petition to declare noncustodial juvenile a ward of the court, is directory because statutory scheme does not provide a consequence for a violation].)

"Whether a particular statute is intended to impose a mandatory duty is a question of interpretation for the courts." (*People v. Lara* (2010) 48 Cal.4th 216, 225; accord, *City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 924 ["Courts determine whether an obligatory statutory provision should be given mandatory or directory effect by ascertaining the legislative intent."].) "Of course, when the Legislature imposes particular statutory requirements, it generally does not intend for them to be disregarded. [Citation.] But where . . . "'the consequences of not obeying them in every particular are not prescribed, the courts must judicially determine them.'" (*City of Santa Monica*, at p. 924.)

Although section 5350, subdivision (d)(2), provides a court or jury trial "shall" commence trial within 10 days of a demand, the provision is directory rather than mandatory because it "does

not provide a consequence or penalty for failure to commence the trial within 10 days of the demand." (*Conservatorship of James M.* (1994) 30 Cal.App.4th 293, 298 (*James M.*); accord, *M.M., supra*, 39 Cal.App.5th at p. 500; see *Briggs, supra*, 3 Cal.5th at p. 849 ["'[A] time limitation for the court's action in a matter subject to its determination is not mandatory (regardless of the mandatory nature of the language), unless a consequence or penalty is provided for failure to do the act within the time commanded.'"]; cf. Pen. Code, §§ 859b [providing as to custodial defendants, with limited exceptions, "the magistrate shall dismiss the complaint if the preliminary examination is set or continued beyond 10 court days from the time of the arraignment, plea, or reinstatement of criminal proceedings"], 1382 [felony case must be dismissed if "a defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information, or reinstatement of criminal proceedings" unless there is a time waiver or other exceptions apply].)

Further, as the Court of Appeal explained in *James M., supra*, 30 Cal.App.4th at pages 298 to 299, "[O]ne consequence of holding section 5350, subdivision (d) mandatory would be to divest the trial court of jurisdiction *by mere implication* rather than by express statutory command. [Citation.] 'While the courts are subject to reasonable statutory regulation of procedure and other matters, they will maintain their constitutional powers in order effectively to function as a separate department of government. [Citations.] Consequently an intent to defeat the exercise of the court's jurisdiction will not be supplied by implication.' [Citation.] For this reason, we cannot say the Legislature *impliedly intended* to divest the superior court of

11

jurisdiction to rule on a conservatorship petition where, as here, the trial [was] delayed four days . . . ."

Moreover, "while the Legislature has broad authority to regulate procedure, the constitutional separation of powers does not permit statutory restrictions that would materially impair fair adjudication or unduly restrict the courts' ability to administer justice in an orderly fashion." (*Briggs, supra*, 3 Cal.5th at p. 854.)  The Supreme Court in *Briggs*, in holding the requirement in Proposition 66, the Death Penalty Reform and Savings Act of 2016 (Gen. Elec. (Nov. 8, 2016) § 1), that the appellate review process for capital cases be completed within five years was directory rather than mandatory, declined to infer the voters "intended strict adherence to a fixed deadline that would undermine the courts' authority as a separate branch of government." (*Briggs*, at p. 858; accord, *People v. Engram* (2010) 50 Cal.4th 1131, 1151-1152 ["in light of the constitutional separation-of-powers considerations," Pen. Code, § 1050, subd. (a), which gives trial preference to criminal cases over civil cases, "cannot properly be interpreted to require a trial court completely to forgo or abandon consideration of *all* civil cases" or "to strip a trial court of the ultimate control over the cases within its jurisdiction"].)  The *Briggs* court explained, "Deciding cases and managing dockets are quintessentially core judicial functions. They are grounded in the Constitution and may not be materially impaired by statute." (*Briggs*, at p. 858.)

Jose's reliance on *Kevin M., supra*, 49 Cal.App.4th at page 87 is misplaced.  There, the conservator challenged the conservatee's right to a jury trial on the basis his demand for a jury trial was untimely.  (*Id*. at p. 86.)  The court held section 5350, subdivision (d)(1), which provides a "[d]emand for court or jury trial shall be made within five days following the hearing on

12

the conservatorship petition" was mandatory, because the use of the term "'shall'" rendered the statute "'presumptively mandatory'" (*Kevin M.*, at p. 87). The court explained, "'[W]hen a statute directs things to be done by a private person within a specified time, and makes his rights dependent on proper performance, unless the failure to perform in time may injure the public or individuals, the statute is mandatory.'" (*Id.* at p. 88.)

Unlike subdivision (d)(1) of section 5350 at issue in *Kevin M.*, which imposes an obligation on the *conservatee* to demand a jury trial within five days in order to preserve his or her right to a jury trial, subdivision (d)(2) imposes an obligation on the *court* to commence trial within 10 days of the trial demand. We decline to interpret the legislative intent in enacting subdivision (d)(2) of section 5350 to divest the court of jurisdiction, contrary to the purpose of the LPS Act to protect gravely disabled individuals, especially in light of the absence of a statutory penalty for the court's failure to comply with its obligation. Rather, we find the reasoning in *M.M., supra*, 39 Cal.App.5th at page 500 and *James M., supra*, 30 Cal.App.4th at pages 298 to 299 to be persuasive and conclude section 5350, subdivision (d)(2), is directory, rather than mandatory. Therefore, the trial court did not act in excess of its jurisdiction in conducting the jury trial 137 days after Jose's jury trial demand.

Jose also contends he was denied due process because of the significant delay of his jury trial. "In conservatorship cases, we balance three factors to determine whether a particular procedure or absence of a procedure violates due process: the private interests at stake, the state or public interests, and the risk that the procedure or its absence will lead to erroneous decisions." (*John L., supra*, 48 Cal.4th at p. 150; accord, *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 539.) In

13

*James M.*, the Court of Appeal recognized a conservatee's "strong interest in a prompt determination of issues raised by a reappointment petition so that he or she may avoid the disabilities of conservatorship where they no longer are warranted." (*James M., supra*, 30 Cal.App.4th at p. 299.)  But as the court explained, "[T]his interest is sufficiently protected by the undisputed power of the superior court to dismiss the reappointment petition where the delay in the proceedings has proved prejudicial to the conservatee's interests." (*Ibid.*) Although the 137-day delay of the jury trial without any explanation by the trial court is troubling, and significantly greater than the four-day delay in *James M.*, at page 296, Jose has not shown he was prejudiced by the delay.  He does not challenge the jury's finding he was gravely disabled or claim any error in the jury's verdict.  (See *M.M., supra*, 39 Cal.App.5th at p. 501 [noting conservatee conceded he received a fair trial and did not assert any error in the jury's finding].)  On these facts, Jose was not denied due process.

## DISPOSITION

The judgment is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.          DILLON, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14