I concur in the decision to affirm the trial court's judgment in this case. However, I respectfully dissent from the majority's conclusion an appellate court must conduct an independent review of the record in an appeal from a conservatorship proceeding under the Lanterman-Petris-Short Act (Welf. Inst. Code, § 5000 et seq.; all further statutory references are to the Welfare and Institutions Code) if appointed counsel files a brief failing to raise any issues.
Under Anders v. California (1967) 386 U.S. 738 [87 S.Ct. 1396] andPeople v. Wende (1979) 25 Cal.3d 436, where an attorney appointed to represent an indigent *Page 684 
defendant on appeal in a criminal case submits a brief summarizing the case's trial proceedings and facts and, although possibly referring to matters in the record which might arguably support the appeal, does not raise any specific issues, the appellate court must independently review the proceedings to determine whether it presents any arguable issues. (Anders v. California, supra, 386 U.S. at p. 744; Peoplev. Wende, supra, 25 Cal.3d at pp. 440, 442.) Conservatorship of Besoyan
(1986) 181 Cal.App.3d 34 held independent review by the appellate court is also required where an indigent conservatee's appointed counsel files a similar brief. (Id. at p. 38.)
However, In re Sade C. (1996) 13 Cal.4th 952 held an appellate court's duty to independently review the record only applies to the first appeal of right by indigent criminal defendants, and refused to extend this requirement to indigent parents challenging adverse rulings in juvenile dependency proceedings, including orders permanently terminating parental rights. While Sade C. involved juvenile dependency appeals, the breadth of the Supreme Court's analysis of this question, plus the opinion's emphasis on limiting an appellate court's review obligation to criminal matters, leads me to conclude this duty no longer applies in appeals from conservatorship proceedings under the Lanterman-Petris-Short Act. Thus,Sade C. places Besoyan's holding in doubt.
First, it is important to note what this case is not about; the right to the assistance of counsel. Margaret L. had both a statutory and constitutional right to be represented by a lawyer. (§5365; Lassiter v. Department of Social Services (1981)452 U.S. 18, 26-27 [101 S.Ct. 2153] [presumption of a right to counsel exists where an indigent litigant may be deprived of his or her physical liberty]. See also (Lessard v. Schmidt (E.D.Wis. 1974) 379 F. Supp. 1376
[due process denied in civil commitment proceeding by, inter alia, denial of counsel], vacated on other grounds in Schmidt v. Lessard (1975)421 U.S. 957, prior judgment reinstated on remand in Lessard v. Schmidt
(E.D.Wis. 1976) 413 F. Supp. 1318; see also Heryford v. Parker (10th Cir. 1968) 396 F.2d 393 [mentally deficient juvenile denied due process when not afforded legal counsel at hearing resulting in his involuntary commitment]; Towne v. Hubbard (Okla. 2000) 3 P.3d 154, 159, fn. 18 [recognizing rule; citing cases]; In re Rapoport (N.Y.App.Div. 199 7)239 A.D.2d 422 [657 N.Y.S.2d 748, 749] [counsel representing patient in involuntary commitment proceeding entitled to payment of fees].) The superior court appointed counsel to represent Margaret L. at trial, and we appointed an attorney to represent her in this appeal.
This case involves the question of whether a conservatee represented by appointed counsel is entitled to an appellate court's independent review of *Page 685 
the proceedings as established by Anders v. California, supra,386 U.S. 738 and extended by People v. Wende, supra, 25 Cal.3d 436 to independent review of the entire record. (See In re Kayla G. (1995)40 Cal.App.4th 878, 882-886.) In Sade C. the Supreme Court made it plainly clear the right to appointed counsel in and of itself did not trigger an appellate court's obligation to so review the record when appointed counsel failed to raise any issues. (In re Sade C., supra,13 Cal.4th at pp. 982-985, fns. 11, 12, 13, 14.)
Sade C. reviewed Anders extensively, including both its judicial antecedents and progeny, and reached the following conclusions: "First,Anders establishes certain procedures for state appellate courts that are `prophylactic' in nature. [Citations.] . . . [¶] Second, Anders's `prophylactic' procedures are limited in their applicability to appointed appellate counsel's representation of an indigent criminal defendant in his first appeal as of right. [Citations.] . . . [¶] Third, Anders's `prophylactic' procedures are dependent for their applicability on the existence of an indigent criminal defendant's right, under theFourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state in his first appeal as of right. [Citations.] . . . [¶] Fourth, Anders's `prophylactic' procedures are designed solely to protect an indigent criminal defendant's right, under the Fourteenth Amendment's due process and equal protection clauses, to the assistance of appellate counsel appointed by the state in his first appeal as of right. [Citations.]" (In re Sade C., supra,13 Cal.4th at pp. 977-978.)
Sade C. did not expressly disapprove Besoyan. But in footnotes, the court twice declared "[i]nsofar as any decision of ours or of the Courts of Appeal expressly or impliedly extends Anders beyond what is described in the text, it is disapproved." (In re Sade C., supra,13 Cal.4th at pp. 983-984, fn. 13; 993-994, fn. 21.) Furthermore, Sade C. made it clear the right to independent review of the record by an appellate court applies only to criminal cases. "Anders's `prophylactic' procedures have heretofore been limited in their applicability to appointed appellate counsel's representation of an indigent criminal defendant in his first appeal as of right. The United States Supreme Court established that limitation in Anders itself. It has reaffirmed it in its progeny. [¶] . . . A fortiori, they should not be applied to such an entitlement outside the sphere of criminal law." (Id. at pp. 984-985, fn. omitted. See also In re Kayla G., supra, 40 Cal.App.4th 878, 886.)
The majority conclude conservatorship proceedings resulting in an involuntary commitment, such as here, should be treated as if they are criminal cases. However, the California Supreme Court has already rejected this approach. *Page 686 
In Conservatorship of Susan T. (1994) 8 Cal.4th 1005, the court rejected a claim the exclusionary rule requiring the suppression of evidence seized in violation of the Fourth Amendment to the United States Constitution applies to conservatorship proceedings under the Lanterman-Petris-Short Act. In reaching this conclusion, the court noted prior decisions had applied the exclusionary rule to only those non-criminal proceedings, such as property forfeiture actions, embodying a close identity with the aims and objectives of criminal law enforcement. (Id. at pp. 1014-1016.)
Susan T. concluded conservatorship proceedings served different objectives: "We find no similarity between the aims and objectives of the act and those of the criminal law. What we have said of commitment proceedings for the mentally retarded (§§ 6500-6513) is equally true of conservatorship proceedings under the act: `The commitment is not initiated in response, or necessarily related, to any criminal acts; it is of limited duration, expiring at the end of one year and any new petition is subject to the same procedures as an original commitment [citation]; the petitioner need not be a public prosecutor. . . . The sole state interest, legislatively expressed, is the custodial care, diagnosis, treatment, and protection of persons who are unable to take care of themselves and who for their own well being and the safety of others cannot be left adrift in the community. The commitment may not reasonably be deemed punishment either in its design or purpose. It is not analogous to criminal proceedings.' [Citations.]" (Id. at p. 1015. See also Conservatorship ofBaber (1984) 153 Cal.App.3d 542, 550 ["A conservatorship proceeding is not a prosecution for a particular act, but an attempt to determine a condition which is subject to change"].)
The fact that a conservatee's involuntary commitment is similar to the incarceration of a criminal defendant has led the Legislature and courts to grant proposed conservatees some of the procedural safeguards accorded to criminal defendants. (See § 5365 [right to counsel]; § 5350, subd. (d) [jury or court trial];Conservatorship of Roulet (1979) 23 Cal.3d 219, 230 [state's burden of proof is beyond a reasonable doubt; right to a unanimous jury verdict];Waltz v. Zumwalt (1985) 167 Cal.App.3d 835, 838-839 [free transcript of proceedings for purposes of appeal].)
But because a conservatee's commitment is different in purpose and duration from a criminal defendant's incarceration, differences exist which afford a conservatee rights not granted to a criminal defendant. For example, conservatorships under section 5350 last for only one year. (§ 5361.) During *Page 687 
that time, a conservatee can petition for immediate release or for a modification of the conservatorship's terms. (§§ 5358.3,5364.) Also, as happened in this case, a conservatee who displays improvement can receive day passes to temporarily leave the facility where he or she is committed.
To extend the commitment beyond one year, the petitioning party must again prove beyond a reasonable doubt the conservatee is, at that time, gravely disabled. (§§ 5350, subd. (d), 5362;Conservatorship of Kevin M. (1996) 49 Cal.App.4th 79, 84.) And, if requested, the conservatee is entitled to have the new proceeding tried before a jury. (§ 5365; Conservatorship ofBenvenuto (1986) 180 Cal.App.3d 1030, 1037.)
Conversely, other rights granted to criminal defendants do not apply to proposed conservatees. As noted, the exclusionary rule employed to remedyFourth Amendment violations is inapplicable in conservatorship proceedings. (In re Susan T., supra, 8 Cal.4th at pp. 1017-1020.) Unless an answer would be inculpatory, neither does the privilege against self-incrimination. (Conservatorship of Baber, supra,153 Cal.App.3d at p. 550 [proposed conservatee cannot refuse to testify]; Conservatorship ofMitchell (1981) 114 Cal.App.3d 606, 610-612 [proposed conservatee cannot exclude statements obtained during a pre-commitment examination because of the absence of an admonition and waiver of his or her rights].) Nor does the double jeopardy doctrine preclude the state from seeking to establish a conservatorship subsequent to a prior adverse decision. (Conservatorship of Baber, supra, 153 Cal.App.3d at pp. 549-550.)
Rather than seeking to analogize conservatorship proceedings to criminal prosecutions, a better approach is to determine whether requiring an appellate court to independently review the record is one of the procedural safeguards integral to maintaining the Lanterman-Petris-Short Act's delicate balance between treating sick people without legal delays and ensuring persons are not deprived of their liberties without due process of law. (Conservatorship of Kevin M.,supra, 49 Cal.App.4th at p. 89.) The sole benefit derived from the appellate court's independent review is ensuring appointed counsel "acts in the role of an active advocate in behalf of his client." (Anders v.California, supra, 386 U.S. at p. 744. See also In re Sade C., supra,13 Cal.4th at p. 992.) Balanced against this sole benefit is the lost time and money, and most importantly, delay in entering a final decision. (Inre Sade C., supra, 13 Cal.4th at p. 993.)
Prior judicial experience implementing independent appellate review reflects this benefit is of minimal assistance to indigents. Sade C. described the *Page 688 
chance that an erroneous result will occur in the absence of independent review by an appellate court as "negligible." (Id. at p. 990.) This court and Division One of the Fourth Appellate District have described the results in juvenile dependency proceedings as "unproductive." (In re Kayla G., supra, 40 Cal.App.4th at p. 888; In reAngelica V. (1995) 39 Cal.App.4th 1007, 1016.)
In this context, I note the procedures for appointing appellate counsel has changed dramatically since Anders and Wende. The Courts of Appeal must now adopt procedures for appointing counsel. (See Cal. Rules of Court, rules 39.4(a), 76.5.) Guidelines have been promulgated establishing minimum requirements for attorneys representing indigents. (Cal. Stds. Jud. Admin., § 20.) To achieve these goals, all appellate districts in California have contractually assigned the rating and recommendation for appointment of appellate counsel to independent project administrators. In addition, appointed counsel are now paid on an hourly basis. Thus, not only has there been a significant improvement in the quality of appellate representation for indigents, but the creation of an economic motive to discourage the routine filing briefs which find no arguable issues. (See In re Sade C., supra, 13 Cal.4th at p. 990; Inre Angelica V., supra, 39 Cal.App.4th at pp. 1014-1015.)
As Sade C. recognized, "Procedures that are practically `unproductive,' like those in question, need not be put into place, no matter how many and how weighty the interests that theoretically support their use. To be sure, these procedures may have `symbolic' value of some kind. [Citation.] Such value, however, is too slight to compel their invocation." (In re Sade C., supra, 13 Cal.4th at pp. 990-991, fn. omitted.) I would hold the procedural safeguards established by Anders
and Wende do not apply in appeals from conservatorship proceedings brought under the Lanterman-Petris-Short Act. *Page 689